Ford *v.* Clough & al.

FORD, *treasurer of* ALNA *vs.* CLOUGH & *al.*

Where the bond' given by a collector of taxes contained a recital that he was duly chosen, and was conditioned for the faithful discharge of his duty; it was held, in an action on the bond for not paying over monies collected, that the sureties could not controvert the legality of the meeting at which he was chosen, nor the validity of his election, nor the legality of the assessment of the taxes, antecedent to their commitment to him; nor any act of the town for ·which they *themselves would not be liable in consequence of their suretyship.*

If the return on a warrant for calling a town meeting does not show how the meeting was warned, it will be presumed, in the absence of other proof, that it was warned in the mode agreed upon by the town.

It is no valid objection to such return, that it bears date on the day of the meeting.

An article in the warrant for a town meeting, " to see what measures the town will take to build" a certain bridge, " or any matters and things relating thereto," was held sufficient to authorise the raising of money for that purpose.

A town, legally assembled in its corporate capacity, may lawfully raise money for parochial purposes, as well since the *Stat.* 1821, *ch.* 135, as before.

In an action on the official bond of a collector of taxes, where the point in issue was whether the money collected had been paid over to the treasurer or not, it was held that the treasurer, being released by the town, was a competent witness to disprove the payment.

It is competent for a town, in its corporate capacity, by a vote of the majority, to release a debt, as well as to contract one.

THIS was an action of debt on a bond dated *June* 29, 1826, given by *Samuel Clough* as principal, and the other defendants as his sureties, to *Carlton Dole,* treasurer of *Alna,* or his successor in office; reciting that *Clough* " was duly chosen and appointed on the third day of *April* to the office of collector of taxes within said town of *Alna* for the year next ensuing"; and conditioned that he should " faithfully discharge his duty as collector as aforesaid." The pleadings, which were special, resulted in the following issues to the country :—1st, That *Clough* paid over two thousand eight hundred and nineteen dollars and seventy nine cents for the taxes of 1826, to *Carlton Dole* and the plaintiff, being treasurer, &c. :— 2d. That he paid the like sum to *Dole* for the taxes of 1826 :—3d.

Ford *v.* Clough & al.

That there were no legal assessments of taxes for 1826 :—4th. That no legal lists of assessments were committed to *Clough* :— 5th. That *Clough* had no legal and sufficient warrant to collect the taxes :—6th. That he paid to the State Treasurer two hundred and five dollars and ninety cents and to the County Treasurer one hundred and ninety-seven dollars and twenty-nine cents, and to *Dole* and the plaintiff two thousand four hundred and sixteen dollars and sixty cents for the town tax of 1826, which were accepted and receipted by said Treasurers in full of the taxes of *Alna* for 1826.

At the trial of these issues before *Parris J.* the plaintiff produced the warrant for a town meeting in *Alna*, to be held on the third day of *April*, 1826, to raise the annual taxes for that year, on which the constable's return was in these words : " Pursuant to the within warrant I have summoned and notified the inhabitants of *Alna*, qualified to vote in town affairs to meet at the time and place, and for the purpose within named ;" without saying how they were notified. To this return the defendants objected that it was insufficient in not showing how the inhabitants were notified, and for other defects. At the meeting thus held it appeared that two thousand three hundred and fifty-three dollars and twenty-two cents were voted for the town taxes for 1826, and it appeared that the State tax of *Alna* for that year was two hundred and five dollars and ninety cents, and the county tax one hundred and ninety-seven dollars and twenty-nine cents, for which warrants were duly issued to the assessors, requiring their assessment. The overlayings were forty-one dollars and fifty cents, and the highway deficiencies twenty-one dollars and eighty-eight cents. The plaintiff then produced a paper book, stated to be an assessment of taxes in *Alna* for that year. To this the defendants objected that it was not certified to be the assessment of taxes upon the town of *Alna* for 1826. The certificate on it is in these words :—" The aforesaid list of taxes, assessed on the polls and estates of the persons therein named, include State, county, town and minister tax for the year 1826." Here follows a specification of the amount of each. " A copy of the aforesaid list of taxes we committed to *Samuel Clough*, collector, for collection, on the 29th day of *June*, 1826, and ordered him to pay the State tax

to *Elias Thomas*, Esq. by the first day of *January* next, and to pay the county tax to *William M. Boyd*, Esq. before the last day of *August* next ; the town tax, one third, 20th of *August*, one third the 20th *January*, one third 1st of *April* next. *Jere. Jewett, John McLean*, assessors of the town of *Alna.*" *John McLean* and *Jeremiah Jewett* were also defendants in this action, being sureties for *Clough*; and the whole certificate of commitment, except the signatures, was proved to be in the hand writing of *Jewett*. It was also proved that certain persons in said list paid taxes in *Alna* to *Clough* for the year 1826. The defendants called for proof that the assessment, or a copy thereof, was deposited in the clerk's office or assessor's office in *Alna* ; and objected to the admission of the tax bills, as insufficient without such proof; but no such proof was produced during the trial. The defendants produced a receipt signed by *Carlton Dole*, as treasurer, to *Clough*, dated *March* 1826, for six hundred and fifty-five dollars and sixty-seven cents, in part of taxes for 1825. Also a receipt from the same to the same, as follows: "Received of *Samuel Clough*, collector of taxes in *Alna*, for the years 1825 and 1826, the taxes for State and county of said years as to said town per warrants and treasurer's books. *March* 31, 1827. *C. Dole*, Treasurer." The defendants also produced eleven receipts from the plaintiff to *Clough*, dated on different days between *June* 18, 1827, and *Nov.* 8, 1828, inclusive, for monies paid on account of the taxes of 1825 and 1826, without discrimination, amounting in all to twelve hundred and seventy-one dollars and claimed the right to apply these payments first to the taxes of 1826, in the absence of any proof of assessment of taxes for 1825. The plaintiff, to show a legal assessment for 1825, then read the warrant for a town meeting *April* 4, 1825, to raise money, &c. for that year. To this the defendant objected that the warrant and return were both illegal. The warrant ran thus :— " You are hereby required, in the name of the State of Maine, to notify and warn the inhabitants of said town, qualified according to the constitution, to assemble at the meeting-house in said town, on the first *Monday* of *April* next, being the fourth day of said month, at ten

o'clock in the forenoon, to give in their votes to the selectmen for one representative, to represent them, that is, Lincoln District, in the Congress of the United States of America. You are also required in the name of the State of Maine to summon and notify the inhabitants of said town, qualified to vote in town affairs, to assemble, and at the same time and place as abovementioned, to act on the following articles," &c. The return thereon was thus:— " Pursuant to the within warrant I have notified the inhabitants of the town of *Alna,* qualified as within expressed to appear," &c., without saying how such notice was given. In the transactions of this meeting, as well as that of 1826, it appeared that five hundred dollars were voted for the Rev. Mr. *Johnson's* salary ; to which the defendants objected as illegal, on the ground that a town, as such, had no right to raise money for parochial purposes since the passage of the act of 1821 concerning parishes. There was no evidence offered of any division of said town of *Alna* into parishes in fact, or by operation of law.

The plaintiff, in further proof of the legal voting of the monies assessed for 1825, offered the transactions of a town meeting held *April* 18, 1825. To the return on the warrant for this meeting the defendants made the same objection as before made to the return on the warrant for *April* meeting, 1826 ; the returns being similar. In the warrant for the meeting, *April* 18, 1825, the article relied on was in these words :—" 3d. To see what measures the town will take to build a bridge near *Ezekiel Averill,* 2d, which was lately burnt ; or any matter and things relating thereto." The vote thereupon was in these words :—" Art. 3. Voted to have a committee of three. Voted that the sum of one hundred dollars be raised towards building the bridge near *Ezekiel Averill,* 2d, and that the selectmen be a committee to contract for the erection of said bridge, with power to determine upon the kind of materials which compose the same, the time in which it shall be completed, and the place where located, and to draw their order on the town treasurer, for the sum necessarily expended in completing said bridge." To this the defendants objected that the article did not authorise the vote

43

of money.  The defendant here also objected that the plaintiff's evidence of legal assessments was imperfect, without proof that the assessment, or a copy, was lodged in the office of the town clerk or assessors; but no such proof was exhibited during the trial.

The defendants, in relation to certain paper books produced as assessments for 1825, further objected that there was no certificate on them showing what taxes they contained or for what town.  They were in the hand writing of *John McLean*, one of the defendants, and were signed by him and *Nathaniel Plummer*.  The tax bills, in the hands of *Clough* for the year 1825, were produced, pursuant to the call of the plaintiff, and were signed by *John McLean* and *Nathaniel Plummer*.  The bills of 1825, produced by *Clough*, contained on the first leaf a commitment of the taxes to him for collection, but without any warrant to enforce payment, and no such warrant appeared in the book, the latter leaves of which were blank; and it appeared in evidence that it had been the general usage of the assessors to write the warrant for collection at the end of the tax books.  But these bills were much worn and mutilated, and it was left for the consideration of the jury, upon all the evidence on this point, whether a warrant originally accompanied them.

The bills of 1826 were not produced at the trial, although notice was given to the defendants to produce them.  *Carlton Dole* testified that when this cause was tried in the Common Pleas, in 1829, he saw the bills of 1826 then produced by the defendants; that the warrant was then connected with the bills, and he read a part of it. The existence of a warrant for collection of the taxes for 1826, was also left to the jury.  The plaintiff, to prove that the receipt produced by the defendants, dated in *March* 1826, for six hundred and fifty-five dollars and sixty-seven cents, was involved in the subsequent receipt of *March* 31, 1827, offered *Carlton Dole* as a witness; to whose admission the defendants objected on the ground of interest; and to the point that his interest had been released, the plaintiff offered a vote of the town to that effect, passed *April* 4, 1831.  The return on the warrant for calling this meeting was similar to that in 1826 before mentioned, and was objected to for the

same reason.   The defendants also showed that the town, at a sub-sequent meeting, held *Sept.* 12, 1831, voted to reconsider the above vote, passed *April* 4th.   They further objected that the vote to re-lease the witness was in itself insufficient, being without considera-tion paid, and not being by deed ; and for other reasons.   Also that the receipts, being official acts, and admissions of facts, amount-ing to contracts with *Clough*, it was not competent for the plaintiff to control them by other proof.   It was also contended by the de-fendants, that if the town had any remedy to correct the mistake of *Dole*, their treasurer, it was against. *Clough* alone, in *assumpsit* ; and not against his sureties on the bond, who were *ipso facto* dis-charged by the treasurer's official receipt given for the money. But for the purpose of making progress in the trial the Judge overruled all the defendants' objections, excepting such as were matters of fact, which were left to the jury.   The books and paper evidence before mentioned were admitted subject to all legal objections by either party ; and a verdict being returned for the plaintiff, the points of law raised at the trial were reserved for the consideration of the court.

*Greenleaf* and *Barnard*, for the defendants, contended that they were not liable unless *Clough* had legal authority to collect the tax-es ; *Foxcroft v. Nevens*, 4 *Greenl.* 72 ;—that the warrants for the town meetings in 1825 and 1826, were insufficient, in not describ-ing the persons to be notified ;—that the returns were insufficient in not saying who were notified, nor how the notice was given ; *Lan-caster v. Pope*, 1 *Mass.* 88 ; *Davis v. Maynard*, 9 *Mass.* 242 ; *Mitchell v. Osgood*, 4 *Greenl.* 124 ;—that the commitment of tax-es legally assessed was a condition precedent on the part of the town ; *Elwell v. Shaw*, 1 *Greenl.* 339 ; *Dillingham v. Snow*, 5 *Mass.* 558 ; *Nelson v. Milford*, 7 *Pick.* 25 ; *Waldron v. Lee*, 5 *Pick.* 329 ;—that the town, as such, could not lawfully raise money for parochial purposes, nor be at the expense of its assessment, since the *Stat.* 1821, *ch.* 135 ;—that the want of a copy of the as-sessment lodged in the office of the town clerk or assessors was fatal ; *Thurston v. Little*, 3 *Mass.* 429 ; *Blossom v. Cannon*, 14

*Mass.* 177; *Thayer v. Stearns,* 1 *Pick.* 482 ; *Stat.* 1821, *ch.* 116 ; *Stat.* 1826, *ch.* 337 ;—that the vote of money to build the bridge was illegal, and vitiated the whole assessment ; because it was not authorised by the article in the warrant ; nor was it within the authority of the town, which could only call on the inhabitants for labor and materials, and not for money, till the passage of the statute of 1828 ; *Stetson v. Kempton,* 13 *Mass.* 272 ; *Bussey v. Gilmore,* 3 *Greenl.* 191 ; *Libby v. Burnham,* 15 *Mass.* 144; *Stat.* 1821, *ch.* 188 ;—that the assessments were not under the hands of the assessors in the manner required by law ; *Colby v. Russell,* 3 *Greenl.* 227 ;—that there was no evidence of a warrant to collect the taxes, and it was improperly left to the jury to presume this fact, it not being an ancient transaction ;—that Mr. *Dole* was not a competent witness ; the meeting at which he was released being illegally warned ; and the release of the debt being beyond the legitimate powers of the town, without payment ;—and that the treasurer's receipt, though erroneously given, was an official act, and as such a valid discharge of the sureties ; the remedy, if there was any mistake, being by *assumpsit* against the collector alone. *Boston Hat Man. Co. v. Messenger,* 2 *Pick.* 223 ; *Baker v. Bridge,* 8 *Pick.* 22 ; 1 *Mad. Chan.* 233, 234.

*Allen,* for the plaintiff, cited *Blackburn v. Walpole,* 9 *Pick.* 97; *Saxton v. Nimms,* 14 *Mass.* 315 ; *Gilman v. Holt,* 4 *Pick.* 258 ; *Mussey v. White,* 3 *Greenl.* 290 ; *Thayer v. Stearns,* 1 *Pick.* 109 ; *Waldron v. Lee,* 5 *Pick.* 523 ; *Woodbury v. Hamilton,* 6 *Pick.* 101 ; *Taft v. Montague,* 14 *Mass.* 282 ; *Nelson v. Milford,* 7 *Pick.* 18 ; *Johnson v. United States,* 5 *Mason,* 425.

MELLEN C. J. delivered the opinion of the Court, at the ensuing *May* term in *Kennebec.*

By inspection of the bond declared on, it appears that the condition contains the following recital : " Whereas the said *Samuel Clough* was duly chosen and appointed on the third day of *April* to the office of collector of taxes within said town of *Alna,* for the year next ensuing from said third day of *April,* and fully to be

complete and ended." Then follows the condition of the bond as copied into the report that " said *Samuel Clough* shall faithfully discharge his duty as collector as aforesaid." The report states that he was chosen for the year 1826. From the language of the condition nothing appears to be assumed by the obligors but that *Clough* should faithfully perform those duties which the law, on his acceptance of the office of collector, devolved upon him, and required him to perform. The sureties have not bound themselves to indemnify the town against the consequences of any irregularities on the part of the town in its corporate transactions, or any irregularities or neglects on the part of the selectmen or assessors or constable. If the object of the action were to recover damages for any such irregularities, they might well say that the condition did not embrace liabilities consequent upon such irregularities or neglects ; *non in hæc federa venimus* would be a very natural and pertinent answer to such an asserted claim. The inhabitants of *Alna* complain of no one, as having violated his official duty, but *Samuel Clough ;* but as to him they complain that he had neglected to pay over the monies which he had collected for the town. He contended that he had paid to the treasurers of *Alna* twenty-four hundred and sixteen dollars and sixty cents, for the town taxes of the year 1826, and that the same was accepted by said treasurers in full for such taxes. This contested question of fact the jury have settled by returning a verdict in favor of the plaintiff for the sum of six hundred and thirty-nine dollars and sixty-five cents.

Viewing the cause in this light, the inquiry at once presents itself, " If the defendants are not legally answerable for the misconduct or neglect of the town, the selectmen, assessors or constable, on what principle should they be permitted to defend themselves in the present action, by shewing that the proceedings of the town, the selectmen, the assessors and the constable, in relation to the taxes in question, were irregular ?" Should it be admitted that those proceedings were irregular, as has been alleged, and that *Clough* might be prosecuted by those whose taxes he has collected and be compelled to reimburse the monies thus demanded and received by him

on account of such irregularity; still that is no reason why proof of such irregularities should be admitted for the purpose of defeating this action. For in this action the obligors are all bound by their own bond, sureties as well as principal, for the official fidelity of *Clough*; but the sureties would not be answerable to those from whom he exacted the payment of taxes, if he acted without legal authority. No facts appear on the report tending to show that the taxes were not all voluntarily paid to the collector; nor have we any ground for presuming that any of those who have paid their taxes to him would ever think of attempting to reclaim the monies so paid. Besides, a proper action for the purpose of reclaiming such taxes, if illegally assessed, would be an action of *assumpsit* against the town, whose agent had received the money; *Amesbury Woolen and Cotton Manufacturing Company v. Inhabitants of Amesbury*, 17 *Mass.* 461; or an action of trespass against the assessors for the illegality of the assessment. Such is the usual action, where the illegality is on the part of the assessors; and by our *Stat.* of 1826, *ch.* 337, the assessors are declared to be liable for their own acts only, and not any antecedent acts on the part of the town or parish, whose officers they are. For the same reason the collector is not considered as responsible for any irregularities on the part of others, antecedent to the commitment of the assessment to him for the purpose of collection. His warrant is his protection against all illegality but his own. *Holden v. Eaton*, 8 *Pick.* 436. For these reasons we are of opinion that according to the facts, as found by the jury, the condition of the bond has been violated by the unfaithfulness and negligence of *Clough*, in not paying into the town treasury the monies he had collected on the bills of assessment committed to him for collection; though such bills were liable to the objections urged against them by reason of the specified imperfections therein and omissions of duty on the part of the assessors, before and at the time of commitment. He violated the condition of the bond by not paying over the sums collected, as he would have violated it by his not duly collecting it of the persons named in the bills of assessment. After having thus collected the money,

we think he ought not to be permitted to deny the legality of the assessment of 1825 or 1826, on account of the omissions of the assessors named in the report.

With respect to the other objections which have been urged, we proceed to express our opinion, though perhaps it may be considered as to some of them, an unnecessary labor.

The objection to the legality of the meeting in *April*, 1826, cannot be sustained a moment. The condition of the bond contains an explicit recital that *Clough* was duly chosen at that meeting, which could not have been the case if the meeting was not a legal meeting. By this recital the defendants are estopped to deny its legality. 1 *Roll.* 872, *b*. 50; *Dyer*, 196, *a.*; *Willes* 9, 25; 4 *Com. Dig. Estoppel a*. 2. The meeting being legal, the proceedings mentioned in the report were also legal.

As to the warrant for the meeting in *April*, 1825, it is not illegal, because two town meetings were called by it. The qualifications of the respective voters in each, were distinctly specified. The case of *Craigie v. Mellen & al.* 6 *Mass.* 7, is directly in point. The return of the constable is not now open to objection. The case of *Tuttle v. Cary*, 7 *Greenl.* 426, differs essentially from this. That was the case of a warrant for calling a parish meeting, the manner of warning which was particularly prescribed in the parish act. But the manner of warning a town meeting is not prescribed by any statute in this State. The words of the third section of our statute *ch.* 114, in relation to this subject are these, viz. "the manner of summoning the inhabitants to be such as the town shall agree upon." Now the case before us does not show that the town of *Alna* had ever agreed upon the manner of summoning the inhabitants; but as it appears that they did assemble in town meeting, at the time appointed, and act under the warrant, by electing town officers, raising sums of money, &c. &c. we ought to presume that they knew how they had been summoned and were satisfied; so that in regard to that meeting they agreed to the manner of summoning, whatever it was: their conduct sanctioned it as a legal meeting duly warned and lawfully assembled. The constable's re-

turns on the several warrants for the meetings in 1825, 1826, and 1831, all bear date of the days on which the respective meetings were holden; but this has frequently been decided to be no legal objection to the legality of the meetings. *Thayer v. Stearns,* 1 *Pick.* 109. It is the common practice, and sanctioned as legal.

Neither can the objection prevail which has been urged against the assessment of 1825, on the ground that a town cannot legally vote money for parochial purposes since the parish act was passed in 1821. A similar objection was made in *Jewett v. Burroughs,* 15 *Mass.* 464, considered and overruled. The same principle was also recognized and confirmed by this court in *Parsonsfield v. Dalton,* 5 *Greenl.* 217; *Richardson v. Brown,* 6 *Greenl.* 355, and again in *Osgood v. Bradley,* 7 *Greenl.* 411, especially in reference to the character and operation of the parish act. We do not perceive any weight in the objection as to the supposed insufficiency of the article in relation to the building a bridge to authorize raising money for the purpose. To raise the sum mentioned was deemed the most proper and effectual measure for the purpose.

In answer to the objection urged against the admissibility of *Dole,* we would observe that the town meeting of *April* 4, 1831, must be deemed to have been legally warned and holden, for the same reasons which we have assigned in regard to the meeting of 1825. But it is contended that the town had no authority to pass the vote, releasing *Dole* from all liability to the town, as it amounted, if it could have any operation, to a gift of whatever sum of money he owed the town. In the first place there is no proof that he did owe the town any thing. There was a question then depending, whether he or the defendants owed it. The town believed that the sum in controversy had never been accounted for to the treasurer, *Dole,* while in office; and, in order to establish the fact and save the town from loss, it was deemed most for the interest of the town to release a doubtful, or possible claim on *Dole.* Towns must always act by majorities, and we are not aware of any decision showing that the town could not legally release a debt as well as contract one. We apprehend that perhaps it does not follow ne-

Ford *v.* Clough & al.

ccssarily that a town may not expend or give away a sum of money lawfully, though they could not legally reimburse the treasury by a tax, voted and assessed specially for that purpose. In *Kempton v. Stetson & al.* 13 *Mass.* 272, the court, by *Parker C. J.* say, " whether any money actually in the treasury, beyond what is needed for the ordinary expenses of the town, and which is not appropriated, may not be disposed of, in pursuance of a vote of the inhabitants, for the common defence of the inhabitants, is a different question from the present, and which we need not now determine. We confine ourselves to the case before us, which is that of a tax founded on a vote to raise money, &c." The vote passed releasing *Dole* from liability so as to remove the objection of interest, operated as effectually as a release by one individual to another formally executed. A corporation may contract by vote and the vote will bind the corporation ; and may by vote release an individual from a contract by which he is bound to such corporation. There can be no question we think as to the correctness of this principle. *Nelson v. Milford,* 7 *Pick.* 18. It follows, as a necessary legal consequence that the vote of reconsideration, passed at the meeting in *September* following, was wholly unavailing. It did not and could not affect the vested rights of *Dole,* acquired by him under the vote passed at the *April* meeting. The result is that *Dole* was a competent witness and properly admitted. We have thus noticed all the objections of a legal nature which have been urged, and the rulings of the Judge upon all of them ; all of which we approve. We see no grounds for sustaining the motion for a new trial, and there must be

*Judgment on the Verdict.*