Decided 17 July, 1899.

## STATE v. ROACH.

[57 Pac. 1016.]

1. CRIMINAL LAW—DECLARATIONS OF CO-CONSPIRATOR.—The testimony of one jointly indicted with defendant for stealing a cow and calf, that he had sold defendant some forty head of cattle, and that the cattle in question were among the number, and that witness was at defendant's place when he started to drive them to the slaughter house, is not sufficient to make out a *prima facie* case of conspiracy or common design between them so as to make acts or declarations of the witness, not in the presence of defendant, admissible against him.

2. DECLARATIONS OF CO-CONSPIRATORS NOT HARMLESS.—The admission of declarations by one jointly indicted with defendant, without making out a *prime facie* case of conspiracy or common design between them, was not harmless error, as it tended to advise the jury that the theory of the prosecution that they were acting together was supported.

From Umatilla: STEPHEN A. LOWELL, Judge.

James Roach, being aggrieved by a conviction on a charge of cattle stealing, appeals.          REVERSED.

For appellant there was a brief over the names of *Carter & Raley* and *Balleray & Hailey*, with an oral argument by *Mr. J. H. Raley.*

For the state there was a brief and an oral argument by *Messrs. Henry J. Bean*, District Attorney, and *James A. Fee.*

MR. JUSTICE BEAN delivered the opinion of the court.

1.   The defendant was jointly indicted with one T. O'Donnell for the crime of larceny by stealing a cow and calf, the personal property of Allen Rhodes.   He was tried separately, convicted, and appeals.

The principal assignment of error is the admission in evidence of certain statements, acts, and declarations of O'Donnell, not in the presence of the defendant.   This evidence was admitted on the theory that the defendant and O'Donnell were jointly concerned in the commission of the crime; and that such acts and declarations were made and done in furtherance of the common design. It is elementary law that, if two or more persons unite to commit an unlawful act, the acts and declarations of one in furtherance of the common purpose are considered the acts and declarations of all, and are, therefore, competent evidence on the trial of one of the parties, although not made in his presence: 3 Greenleaf, Ev. § 94; Wharton, Cr. Ev. § 698; Underhill, Ev. § 492. But it is equally elementary that a foundation must first be laid by proof *aliunde* sufficient to establish *prima facie* the fact of conspiracy or common design, and in this case there was no such proof.   In brief, the evidence for the prosecution tended to show that the cow and

calf described in the indictment belonged to Rhodes;
that they were missed from his place about the twentieth
of October, and that the cow was found in Roach's pas-
ture or stubble field about the fifteenth of the following
month; that about the first of November Roach sold to
a firm of butchers in Pendleton the calf described in
the indictment, and subsequently went to the slaughter
house and got the cow, which had broken out of an in-
closure and followed its calf to that place. But there
was no evidence showing, or tending to show, that in
doing so he was acting in concert with O'Donnell, or
in pursuance of any arrangement or agreement between
them, or that O'Donnell was in any way concerned in
the matter, or that there was any common purpose
or understanding between them to commit the crime
charged. Upon this question the testimony is abso-
lutely silent. So far as it appears, O'Donnell was an
entire stranger to the transaction, and had nothing
whatever to do with the matter.

Notwithstanding this fact, the court permitted the
state to show that a few days after the sale and delivery
of the calf by the defendant to the Pendleton butchers
O'Donnell called at their place of business, and inquired
when it would be killed, saying that Roach was anxious
to have it killed as soon as possible, so that he could
turn the cow out. And it is the admission of this testi-
mony, and the refusal of the court to withdraw it from
the jury, or to instruct them to disregard it, of which
the defendant complains. The contention for the prose-
cution is that O'Donnell's testimony as a witness for
the defendant at his preliminary examination that he
had sold him some forty head of cattle, and that the calf
sold by Roach to the Pendleton butchers, and its mother,
were among the number, and that he was at Roach's
place when he started to drive them to the slaughter

house, was sufficient to make out a *prima facie* case of conspiracy or common design between Roach and O'Donnell, and to justify the admission in evidence against Roach of the acts and declarations of O'Donnell. But we do not think this evidence sufficient for that purpose. It does not tend to establish a conspiracy or common design between them to commit the crime charged in the indictment, but is rather in accordance with the defendant's contention throughout the entire trial that the cow and calf described by the witnesses as having been in his possession did not belong to Rhodes, but were purchased by him from O'Donnell. And, moreover, it is, we think, quite doubtful whether any statement of O'Donnell, made at the time and under the circumstances referred to, would have been competent against the defendant as tending to show concerted action between them in the commission of the crime charged, so as to render the acts and declarations of O'Donnell competent evidence as against Roach on the ground that he was a co-conspirator : *Stoutenburg* v. *Lybrand*, 13 Ohio St. 234.

2.    It is also claimed that the admission of the evidence, if error, was harmless, but the entire theory of the prosecution seems to have been that the defendant and O'Donnell were acting together in the commission of the crime, and the ruling of the court in the admission of the evidence over the objection of the defendant, and its subsequent refusal to strike it out, or instruct the jury to disregard it, was tantamount to advising them that this theory was, at least *prima facie*, supported by the testimony.    In this view the acts and delarations of O'Donnell were very damaging evidence as against the defendant.    It follows that the judgment of the court below must be reversed, and a new trial ordered.

REVERSED.