Argued December 1, affirmed December 22, 1914, rehearing denied January 19, 1915.

## STATE v. CHAPIN.

(144 Pac. 1187.)

**Criminal Law—Delay in Trial—Dismissal of Indictment—Waiver.**

1. Section 1701, L. O. L., authorizing the dismissal of an indictment for failure to try defendant at the next term, is waived, in view of Section 1606, authorizing an appeal from an order refusing to dismiss an indictment for delay, where no motion for dismissal and no objection to the trial was made on that ground, though Article I, Section 10, of the Constitution, declares that justice shall be administered without delay.

> [As to remedy of accused not brought to trial within constitutional or statutory period, see note in Ann. Cas. 1912D, 1273.]

**Criminal Law—Presumptions on Appeal—Continuance.**

2. After a trial of a cause without objection of any kind that it was improperly continued, it will be presumed on appeal that a proper showing was made, or that defendant consented to such postponement, as error will not be presumed.

**Indictment and Information—Following Language of Statute—Larceny by Bailee.**

3. An indictment for larceny by a bailee, alleging that defendant, then and there being the bailee of $3,500, lawful money of the United States of America, a more particular description of which is to the grand jury unknown, the property of persons named, did unlawfully neglect and refuse to deliver, keep and account for the said personal property according to the nature of the trust contrary to the statute, etc., substantially charges the offense in the language of the statute, and is sufficient.

> [As to when charge of crime in indictment or information may be in the language of the statute, see note in 94 Am. Dec. 253.]

**Embezzlement—Ownership—Variance.**

4. Under an indictment for larceny by a bailee, alleging the ownership of the money to be in husband and wife, proof that the money was evidenced by a certificate of deposit in the name of the husband, but that on account of his poor health the wife transacted the principal portion of the business by which defendants secured possession of the money, was not a variance under Section 1444, L. O. L., providing that when a crime involves the commission of a private injury and is described sufficiently to identify the act, an erroneous allegation as to the person injured is not material.

> [As to sufficiency of indictment for embezzlement with respect to allegations of fiduciary relation, see note in Ann. Cas. 1913C, 903.]

**Embezzlement—Larceny by Bailee—Variance.**

5. Under an indictment for larceny by a bailee, alleging that defendant then and there, being the bailee of $3,500, the property of a person named, did neglect to return, etc., proof that defendant received a certificate of deposit from the person named, on which he received the money from a bank, was not a variance.

**Embezzlement—Larceny by Bailee—Admissibility of Evidence.**

6. In a prosecution for larceny by a bailee of money left by a person named with defendant to invest in first mortgages, evidence that the person named had theretofore loaned defendants a sum of money evidenced by a promissory note is admissible, where offered to show that the money, the larceny of which was claimed, was not a loan as the defense alleged.

**Criminal Law—Evidence—Dismissal of Codefendants.**

7. Under Section 1531, L. O. L., providing that where several persons are charged in the same indictment with a crime, and the court is of opinion that, as to a particular defendant, there is not sufficient evidence to put him on his defense, the court must, if requested to do so by another defendant, discharge such defendant, in order that he may be a witness for his codefendant, the denial of such a motion is not error, where the defendants jointly indicted had been granted separate trials and it did not appear that the evidence was insufficient as to the defendant as to whom the dismissal is requested.

**Embezzlement—Larceny by Bailee—Admissibility of Evidence.**

8. In a prosecution for larceny by a bailee, in which the defendant claimed that the money was loaned to a mortgage and trust company of which he was a member, and that he was not personally responsible, it is proper to permit an inquiry into the affairs of the company.

**Embezzlement—Larceny by Bailee—Intent.**

9. Under Section 1956, L. O. L., making it larceny for any bailee of money, etc., to wrongfully convert or neglect or refuse to deliver or account for the money bailed, etc., according to the trust, intent to defraud is not an element of the crime.

**Embezzlement—Larceny by Bailee—Admissibility of Evidence.**

10. In a prosecution for larceny by a bailee of money left with defendant to invest in first mortgages for the owner, the state may

show that defendant had ample opportunity to deliver, return or account for the money.

**Embezzlement—Larceny by Bailee—Defenses.**

11. In a prosecution for larceny by a bailee of money left witn defendant to invest in first mortgages, it is no defense that the owner of the money attempted to collect the money or obtain a surety therefor.

**Embezzlement—Larceny by Bailee—Loan—Sufficiency of Evidence.**

12. In a prosecution for larceny by a bailee, evidence *held* sufficient to show that the money converted was left with defendant personally to invest in first mortgages for the owner's benefit, and was not a loan to a corporation of which defendant was a member.

From Multnomah: JOHN P. KAVANAUGH, Judge.

The defendant, W. H. Chapin, was indicted, tried and convicted of the crime of larceny, and from the judgment and sentence imposed he appeals. The facts are set forth in the opinion of the court.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the names of *Messrs. Wilson, Neal & Rossman* and *Mr. John J. Fitzgerald,* with oral arguments by *Mr. A. King Wilson* and *Mr. George Rossman.*

For the State there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, *Mr. Robert F. Maguire,* Deputy District Attorney, *Mr. John A. Collier,* Deputy District Attorney, and *Mr. Arthur A. Murphy,* Deputy District Attorney, with oral arguments by *Mr. Murphy* and *Mr. Collier.*

Department 2. MR. JUSTICE BEAN delivered the opinion of the court.

The defendants, W. H. Chapin and E. C. Herlow, were charged by the grand jury of Multnomah County, Oregon, by an indictment returned on the 28th day of February, 1914, with the crime of larceny by bailee

of $3,500, lawful money of the United States, the personal property of William Grace and Marion Anne Grace. On May 11, 1914, the defendants entered their pleas of not guilty. The March and April terms of court having intervened, in May defendant W. H. Chapin was tried separately, at his request, The jury, being unable to agree upon a verdict, were discharged, and on the 3d day of June, 1914, defendant Chapin was again brought to trial. The jury returned a verdict of guilty as charged. From an ensuing judgment the defendant appeals.

1, 2. Defendant's counsel makes the contention that under Section 1701, L. O. L., "the court lost jurisdiction to try the case." That section is as follows:

"If a defendant indicted for a crime, whose trial has not been postponed upon his application or by his consent, be not brought to trial at the next term of the court in which the indictment is triable, after it is found, the court must order the indictment to be dismissed, unless good cause to the contrary be shown."

Section 1606 of the same laws provides that an appeal may be taken from an order refusing to dismiss an indictment as provided in the section quoted. According to the provisions of these sections of the code, if the cause was not continued upon proper application, or unless good cause therefor was shown, it was incumbent upon the defendant to make a request to the court for such dismissal and obtain an order granting or refusing the same. No motion of that kind was made before the trial in this case, nor was any objection interposed to the trial of the cause on that ground. Under the circumstances the defendant waived the right, if any there was, to make such a motion; *People* v. *Hawkins*, 127 Cal. 372 (59 Pac. 697).

The court is authorized by Section 1513, L. O. L., to postpone the trial of a criminal action to another day in the same term, or to another term, upon sufficient cause shown by the affidavit of the defendant or the statement of the district attorney: *State* v. *Breaw,* 45 Or. 586 (78 Pac. 896); *In re Von Klein,* 67 Or. 298 (135 Pac. 870). In the absence of any showing as to what proceedings were had for a continuance, after a trial of the cause without any objection of that kind, it will be presumed that a proper showing was made, or else the defendant consented to such postponement. Error will not be presumed: *State* v. *Van Waters,* 36 Wash. 358 (78 Pac. 897); *People* v. *Hawkins,* 127 Cal. 372 (59 Pac. 697); *Johnson* v. *State,* 42 Ohio St. 207. Article I, Section 10, of the Constitution declares that justice shall be administered without delay, and the statute, no doubt, was enacted with that end in view; but we do not think it was intended that the defendant should neglect to invoke the privilege granted or avail himself of a trial upon an indictment, and then upon an appeal from a conviction invoke the statute and have the judgment annulled, without calling the attention of the trial court to the matter before the trial of the cause and affording the state an opportunity to show good cause for the delay, or that the same was in truth "upon the application or by the consent" of the defendant. The defendant's remedy, if he was, at any time, entitled to a dismissal, was to apply to the lower court for the same at the proper time, and if such request was deemed to be improperly refused, he had the right of appeal. It was held by this court in the case of *In re Von Klein,* 67 Or. 298 (135 Pac. 870), that *mandamus* would not lie to compel the dismissal of an indictment for delay in bringing the accused to trial, and that an appeal from an order re-

fusing to dismiss an indictment was the proper remedy.

3. The charging part of the indictment is as follows:

"The said W. H. Chapin and E. C. Herlow, on the 11th day of November, A. D. 1912, in the County of Multnomah and State of Oregon, then and there being then and there the bailee of $3.500, lawful money of the United States of America, a more particular description of which is to the grand jury unknown, all being the personal property of William Grace and Marion Anne Grace, did then and there unlawfully and feloniously fail, neglect and refuse to deliver, keep, and account for the said personal property according to the nature of their trust, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

It is urged on behalf of defendant Chapin that the indictment does not state facts sufficient to constitute a crime. The general rule is that when the statute sets out what shall constitute the offense, it is sufficient for the indictment to charge the offense substantially in the language of the statute. If the elements of the crime are set forth in the indictment sufficiently to inform the defendant of the charge he is called upon to answer, that is all that is required: *State* v. *Ross,* 55 Or. 450 (104 Pac. 596, 106 Pac. 1022, 42 L. R. A. (N. S.) 601, 613); *State* v. *Dougherty,* 4 Or. 200, 205. The indictment in the case under consideration contains a plain, concise statement of acts and circumstances which identify the offense and show an infraction of the statute by the defendants. This section of the laws of the state declares that the acts described in the indictment constitute larceny.

4. It is urged by defendant's counsel that there was a variance between the proof and the allegation of the indictment as to ownership. The evidence in this re-

spect tended to show that the money obtained by the defendants from the Graces was in the United States National Bank of Portland, and that the same was evidenced by a certificate of deposit of $3,580 in the name of William Grace, and that on account of the poor health of Mr. Grace, Mrs. Grace transacted the principal part of the negotiations with the defendants. It was mainly by her authority that the funds were turned over to the defendants to be invested. Mrs. Grace had a special ownership in the money. Mr. Grace indorsed the certificate, and the defendants returned $80 to the Graces and recognized Mrs. Grace's authority in the matter. Section 1444, L. O. L., reads thus:

"When a crime involves the commission of or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured or intended to be injured in not material."

Under this section there can be no question but that the crime is described with sufficient certainty to identify the act charged to have been committed, and the conviction would be a complete bar to another prosecution for the offense. There was no fatal variance: *State* v. *Fogarty,* 105 Iowa, 32 (74 N. W. 754); *State* v. *Congrove,* 109 Iowa, 66 (80 N. W. 227); *People* v. *Nunley,* 142 Cal. 105, 75 Pac. 676). California has a statute the same as Section 1444, L. O. L. *People* v. *Leong Quong,* 60 Cal. 107, was a case involving the larceny of a horse alleged to belong to one Sang Hop. At the trial the owner testified that Sang Hop was his business name and his personal name was Yup Chin. It was there said:

"The name of the owner of stolen property is not a material part of the offense charged. It is only

required to identify the transaction, so that the defendant, by proper plea, may protect himself against another prosecution for the same offense.''

In *People* v. *Ribolsi,* 89 Cal. 492 (26 Pac. 1082), the information charged that the stolen goods were the ''personal property of the estate of George H. Tay and Oscar Backus, copartners, * * under the firm name and style of Geo. H. Tay & Co.'' It appeared that one of the partners was dead, and that his estate was represented by executors who were the legal owners of the property, and a fatal variance was claimed by reason of these facts. It was held under Section 956 that the description left no doubt as to the identity of the act charged to have been committed, and was sufficient. It was said in *State* v. *Nelson,* 11 Nev. 339:

''The only thing essential in either case [larceny or robbery] seems to be an averment which shall show conclusively that the property does not belong to defendant. And courts have shown a disposition to allow the proof of any sort of interest in or right to the custody of the property to be sufficient proof of ownership.''

In the present case Mrs. Grace had ample authority at all times to receive the money from the defendants. She had the right to the custody thereof. If they had accounted to her according to the nature of their trust, it would have been a full compliance with the law. There was nothing in the allegation of ownership of the funds to mislead the defendants or render it doubtful as to what was the charge against them.

5. It is claimed that the evidence does not describe the property as alleged, for the reason that the receipt of the certificate of deposit was not a bailment of

money. If the proof stopped there, the case would be difficult. The evidence further tended to show that the defendants received the $3,580 from the bank and turned over the $80 to the Graces. *People* v. *Meseros,* 16 Cal. App. 277 (116 Pac. 679), cited by defendant's counsel, is authority for the proposition that when one receives a check in one county and cashes it and converts the proceeds in another, without returning to the former, the venue of the charge is in the latter county. It was immaterial whether the defendants received the money direct from one of the Graces, some other person, or through the bank. The $3,500, and not the certificate of deposit, was what was entrusted to their care to invest in real estate mortgages. The certificate was mere evidence of authority to receive the funds.

6. Over the objection and exception of defendant's counsel, the state introduced in evidence the promissory note of Chapin and Herlow in favor of William Grace for $2,500 and interest, dated October 18, 1910, upon which different amounts aggregating $265 were indorsed. Defendant assigns the admission of this evidence as error. It was not claimed by the prosecution that the $2,500 was anything except a loan. The note was offered as a circumstance to show that the Graces would not be likely to loan the defendants or their company $3,500 more, and that neither of the defendants at any time asked for the same as an additional loan.

7. Counsel for defendant Chapin moved the court for an order dismissing the indictment against his codefendant Herlow, in order that the latter might be a witness for Chapin, and allege error in denying the same. Section 1531, L. O. L., directs as follows:

"When two or more persons are charged in the same indictment, and the court is of opinion that, in

regard to a particular defendant, there is not sufficient evidence to put him on his defense, it must if requested by another defendant then on trial, order him to be discharged from the indictment, before the evidence is closed, that he may be a witness for his codefendant."

It is sufficient to state that it does not appear from the record that there was not sufficient evidence against Herlow to put him on his defense, and there was no error in denying the motion or in not permitting defendant Herlow to testify. See *State* v. *Goff,* 71 Or. 352 (142 Pac. 564), where this is fully discussed by Mr. Justice RAMSEY. See, also, *State* v. *White,* 48 Or. 416 (87 Pac. 137, 428); *State* v. *Case,* 61 Or. 265 (122 Pac. 304).

8. Defendant excepts to the ruling of the court permitting counsel for the state, upon cross-examination of defendant Chapin and other witnesses, to inquire into the affairs of the Chapin-Herlow Mortgage & Trust Company and the other corporations of the defendants. It was the claim of the prosecution that the money was intrusted to the defendants, Chapin and Herlow, Mrs. Grace having particular confidence in Mr. Chapin, and testimony was offered tending to show that such was the case. Defendant Chapin, as a defense, claimed that the money was loaned to the mortgage company, and that he was not personally responsible, and testified to that effect. It was therefore proper for the prosecution to cross-examine and inquire in regard to the matters which the defendant had brought into the case as a defense. The case turns upon questions of fact. If the jury had believed the evidence of defendant Chapin that the money was loaned to the Chapin-Herlow Mortgage & Trust Company, he would have been entitled to an acquittal. The

jury by their verdict found that the evidence upon the part of the state was true; hence the law relied upon by defendant as announced in the case of *State* v. *Carmean,* 126 Iowa, 291 (102 N. W. 97, 106 Am. St. Rep. 352), does not apply. This was a case of prosecution for embezzlement of money by an officer of a corporation, which money was paid to the company in a transaction involving the sale of vehicles, which was unquestionably had with the corporation.

9. By several instructions the defendant's counsel requested the court to charge the jury to the effect that under the statute:

"A felonious intent is an essential ingredient of the crime charged against the defendant, and, before he can be convicted, it must distinctly appear that he made intentional wrong disposal of the funds of William Grace and Marion Anne Grace, with a felonious intent to cheat and defraud them. The mere fact that he was unable to pay the money over on demand to Mr. and Mrs. Grace is not enough, if criminal intent is not plainly apparent."

For failure to give the instruction as requested defendant assigns error. The court did, however, instruct the jury as follows:

"A criminal intent in failing to deliver, or keep, or account for moneys intrusted to a bailee is an essential element of the crime charged in this indictment. * * You must be satisfied of such criminal intent beyond a reasonable doubt."

Section 1956 of the statute does not expressly make an intent to defraud a necessary ingredient of the crime charged in the indictment. A wrongful conversion of money of another intrusted to a bailee or a failure, neglect or refusal to deliver, keep, or account for such money according to the nature of the trust

would be a violation of the statute: *State* v. *Ross,* 55 Or. 450 (104 Pac. 596, 106 Pac. 1022, 42 L. R. A. (N. S.) 601, 613); *Purcelly* v. *State,* 29 Tex. App. 1 (13 S. W. 993); 25 Cyc. 98b. In other words, if Chapin was the bailee of the $3,500, the property of Mr. and Mrs. Grace, and wrongfully converted the same to his own use and failed to account for or deliver the same according to the nature of his trust, he would violate the statute, although at the time he appropriated the money he may have intended to speculate therewith and repay the same at some future time.

It was said by Mr. Justice EAKIN, in *State* v. *Ross,* at page 473 of 55 Or., at page 604 of 104 Pac. (42 L. R. A. (N. S.) 601, 613):

"Neither is criminal intent involved under this statute, as we have shown in defining a conversion. Such a conversion, when committed in violation of the terms of this statute (Section 1807), constitutes the offense, and no other intent need be shown."

10, 11. Therefore, the charge in the respect noted was favorable to the defendant. Hence it was proper for the state to show that this defendant had had ample opportunity to deliver, return or account for the money, and in this connection it may be said that an unsuccessful attempt on the part of the Graces to collect the money from either of the defendants, or upon the Mahon notes, or to obtain surety therefor, would not exculpate this defendant. The trial court charged the jury as follows:

"If you find that William Grace or Marion Anne Grace loaned this money to this defendant, or to this defendant and E. C. Herlow, or to the Chapin-Herlow Mortgage & Trust Company, then this defendant must be acquitted. For, if this transaction was a loan then there is no criminal liability. Or if you entertain a

reasonable doubt as to whether this transaction was a
loan, then this defendant must be acquitted, upon the
principle that the defendant is entitled to the benefit
of every reasonable doubt.   But if William Grace or
Marion Anne Grace intrusted this money to this de-
fendant, or to this defendant and another, for the
special purpose that the money be loaned upon first
mortgage securities for the benefit of the owner, then
there was imposed upon the persons to whom it was so
intrusted the duty to loan such money upon first mort-
gage securities for the benefit of the owner, or, failing
to so loan it, to return it to the owner; and if the per-
son or persons to whom the money is so intrusted fails
to use or apply such money according to the nature
of their trust, and then fails to return it to the owner,
but, on the contrary, either intentionally convert it to
their own use, or else intentionally divert it to some
other purpose in violation of the trust, then such per-
son is guilty of larceny by bailee.''

12. At the close of the case counsel for defendant
requested the court to instruct the jury to bring in a
verdict of not guilty.   The record discloses that the
evidence in the case tended to show that in February,
1912, defendant W. H. Chapin and his codefendant,
E. C. Herlow, organized what was known as the
Chapin-Herlow Mortgage & Trust Company, a cor-
poration of the capital stock of $250,000, with W. H.
Chapin as president and E. C. Herlow as secretary;
that prior to that time they had conducted business
under the name of Chamarlow Company with the same
officers, and before that as the Chaplow Company and
as Chapin & Herlow, partners.   The business of the
partnership and the different prior companies merged
into the Chapin-Herlow Mortgage & Trust Company,
which for some time prior to the trial had been in the
hands of trustees.

On the 10th of October, 1912, the defendant, in company with E. C. Herlow, went to the home of William and Marion Anne Grace for the purpose of checking over some business affairs which the defendants had managed for the Graces for a number of years. At that time they informed Mr. and Mrs. Grace that they were working into the mortgage business, and that they had some first real estate mortgages bearing 8 per cent interest. It appears that Mr. William Grace had for several years been afflicted with locomotor ataxia, and was unable to transact much business and unable to be a witness at the trial. On this account Mrs. Grace looked after a considerable portion of their business. We quote from the testimony of Mrs. Grace:

"A few weeks before the bonds became due Mr. Chapin and Mr. Herlow came out to the house and were saying that if anyone had any money to invest, now was the time to invest it in first real estate mortgages of 7 and 8 per cent; that they had some if anyone had money to invest. And I said: 'Well, our bonds become due soon; could you invest in first mortgages at 8 per cent for us?' And they said: 'Yes'; they could. And we were to let them know when the bank notified us that the bonds were due, and they would come out and take Mr. Grace to the bank and get the money."

It seems that the Graces had some money invested in improvement bonds which were at the bank. Mrs. Grace further states: That in about three weeks after the first conversation related, she called up Chapin and Herlow over the phone and informed them that their bonds were due. That defendant Herlow came out to the house in a car to take Mr. Grace to the bank to get the money, and that she did not feel easy about Mr. Herlow getting it, and she phoned Mr. Chapin that

Mr. Herlow was there, and asked him if it was all right for him to have the money, and Mr. Chapin said: "Yes; it is all right for Mr. Herlow to get the money." That thereupon Mr. Grace was assisted to the automobile and taken to the bank for the purpose of obtaining the money upon a certificate of deposit of the United States National Bank for $3,580, $3,500 of which it was understood that Chapin and Herlow would invest in real estate mortgages. Eighty dollars of this amount was sent to the Graces a short time afterward. It appears that Mr. Grace indorsed the certificate of deposit. In about a week or 10 days from the date the money was received Messrs. Chapin and Herlow came to the residence of the Graces and deliverd four promissory notes, three of which, aggregatiñg $4,000, were signed by H. C. Mahon, and one note signed by Chapin-Herlow Mortgage & Trust Company for $3,500. In answer to the question, "What did they tell you about those papers they gave you?" Mrs. Grace answered: "I did not read the notes there. I just looked at them and I noticed that H. C. Mahon's notes were for $4,000, and it was $3,500 that we had let them have, and I asked what the extra $500 was for, and they said that was extra security, and their note. * * They told us that that extra $500 was security, and their note was security; but I don't remember anything else they said." To the question, "Did you know where the mortgages were?" she answered: "Well, no. They kept some of the papers at their office at that time and some of the bills, and we had some of them; and I don't know that we asked them where the papers were. It was an understood thing that they were in their office." Mrs. Grace testified that the defendants never asked or tried to borrow the money; that she thought when they got the

four notes that it was a mortgage, and that the $3,500 note of Chapin-Herlow Mortgage & Trust Company was a receipt therefor; that Chapin and Herlow were to look after everything relating to the matter. It appears that the Graces had been acquainted with Mr. Chapin for about 20 years, and that a portion of the time had lived in the same house, and that they had perfect confidence in his integrity.

Mr. R. R. Duniway, an attorney, testified in effect that defendant Chapin admitted that this $3,500 had been received by them for the purpose of loaning it on first real estate mortgages, and that he did not know why it had not been done. It appears that no part thereof was loaned upon mortgages. Defendant's version of the first conversation is as follows:

"After we had finished our conversation about the statement and the papers were all folded up and handed over to Mrs. Grace, we started to leave, and there was a sort of general conversation about one thing and another, and I think I made the remark that we were working into the mortgage business. She says, 'What can you get on mortgages?' I says: 'It depends upon where the property is located. Six or 7 or 8 per cent; 7 per cent in Laurelhurst, Irvington, and that district, and 8 per cent farther on out.' And she says, 'We may have some money later on, and may want you to handle it for us,' something like that. I says, 'All right; we will be very glad to do anything we can for you, Mrs. Grace.' "

It appears that there was no further understanding or agreement made concerning this money. Mrs. Grace asserts that it was an understood thing that it was to be loaned on first real estate mortgages. It also appears that an attempt was made on the behalf of the Graces to collect the money from the defendants, and that judgment was obtained upon the Mahon

notes, but that the same could not be collected. Section 1956, L. O. L., provides in part:

"If any bailee, with or without hire, * * shall fail, neglect, or refuse to deliver, keep, or account for, according to the nature of his trust any money or property of another delivered or entrusted to his care, control, or use, and which may be subject of larceny such bailee, upon conviction thereof, shall be deemed guilty of larceny and punished accordingly."

It is contended upon behalf of defendant Chapin that the $3,500 was loaned to the Chapin-Herlow Mortgage & Trust Company, that Mrs. Grace accepted the note of the corporation for that amount, and that the testimony does not show that defendant is guilty. The evidence tends to show and the jury found that the note of the Mortgage & Trust Company delivered to the Graces was not a true memorandum or writing indicating the agreement or understanding between the parties, but was a mere subterfuge or attempt on the part of the defendants to pave the way for an excuse for converting the money to their own use, and not loaning the same as it was proposed, in entrusting the same to their care. The whole transaction of the defendant Chapin with the Graces was fully explained by the testimony. By the instructions the questions of fact were fairly submitted to the jury, and the defendant had a fair trial.

We have examined other alleged errors, but find no reversible error in the record.

The judgment of the lower court must therefore be affirmed, and it is so ordered.

AFFIRMED. REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE MCNARY concur.