Argued February 24; reversed May 9; rehearing denied June 20, 1939

# STATE *v.* GERMAN

(90 P. (2d) 185)

Department 2.

*S. J. Bischoff* and *George W. Mead,* both of Portland (Bischoff & Bischoff, of Portland, on the brief), for appellant.

*Frank Sever* and *A. M. Hodler,* Deputy District Attorneys, both of Portland (James Bain, District Attorney, of Portland, on the brief), for the State.

LUSK, J. The first question relates to the sufficiency of the indictment, of which the charging part reads:

"The said Fred W. German and Frank M. German, on the 3rd day of December, A. D. 1936, in the County of Multnomah and State of Oregon, then and there being, and the said Fred W. German and Frank M. German then and there being the officers of a certain corporation, to-wit: Fred W. German Co., a corporation, organized and existing under and by virtue of

the laws of the State of Oregon, and the said Fred W. German and Frank M. German then and there being the bailees of $1,550.00 money of the United States of America, being the personal property of Katherine Danneman, did then and there unlawfully, wilfully and feloniously fail, neglect and refuse to deliver, keep and account for said property according to the nature of their trust, * * *''

The prosecution was brought under § 14-326, Oregon Code 1930, which, so far as material, reads:

"If any bailee * * * shall fail, neglect, or refuse to deliver, keep, or account for, according to the nature of his trust, any money or property of another delivered or entrusted to his care, control, or use, and which may be subject of larceny, such bailee, upon conviction thereof, shall be deemed guilty of larceny * * *''

■ The indictment is in the language of the statute and meets the requirements of a good indictment, charging the crime of larceny by bailee, under *State v. You,* 20 Or. 215, 25 P. 355; *State v. Thompson,* 28 Or. 296, 299, 42 P. 1002; *State v. Chapin,* 74 Or. 346, 351, 144 P. 1187.

The appellant contends that the circuit court erred in denying his motion for a directed verdict of acquittal.

(1) It is said that there was no evidence that the Fred W. German Co. was operating as a corporation at the time set forth in the indictment; that the transaction was between Katherine Danneman and the defendant, Fred W. German, and that the appellant was not acting as an officer of the corporation but as an employee of his father, Fred W. German, doing business as Fred W. German Co.

While, as we shall presently show, the question is not one of vital importance, nevertheless we think there

was ample evidence that the Fred W. German Co. was functioning as a corporation at the time of the alleged transaction. The contention to the contrary is based on these facts: That some time in the year 1935 the corporation, then being in financial difficulties, closed out its two bank accounts, and thereafter the only bank account was one in the name of Fred W. German, and that about a year later this bank account was also closed, and thereafter all moneys were kept in a cash drawer in the office of the company; that in 1935 the office equipment was sold on execution, and that about the same time all the real property of the corporation was conveyed; and that, beginning some time in the year 1935, a practice was adopted of giving receipts in the name of Fred W. German, instead of in the name of the corporation. It appears, however, that the corporation was never dissolved; that in 1937 it filed with the State Tax Commission of Oregon a corporation excise tax return for the year 1936; and that the receipts given by the appellant to Katherine Danneman and to Liefch were executed in the name of the Fred W. German Co. and on stationery bearing the corporate name. No change was made in the books of account, and the name of the corporation remained on the office door.

The minute books show corporate meetings held from time to time up to January 18, 1937, when a resolution was passed authorizing Fred W. German and Eunice Partlow on behalf of "this company" to endorse checks and bank drafts. There is nothing to indicate that any of the persons with whom the appellant dealt in this transaction was cognizant of any facts which would lead them to believe that the Fred W. German Co. was other than what its name implied—a

corporation—, or that it was acting in any other capacity. No claim is made that it was not in fact a corporation, and we apprehend that if the appellant's position were to be sustained by the court, we would announce a doctrine which would make it possible for persons associated together as a corporation under charter from the state to leave on or put off the corporate form as it might suit their convenience or fall in with their scheme to evade an asserted liability. The most to which the appellant was entitled was to have the question submitted to the jury, and that the trial judge did.

■ We think, however, that the question is not one of vital importance as far as the legality of the appellant's conviction is concerned. Whether the corporation was functioning or not, and whether the appellant was acting for the corporation or for his father, he would be guilty of embezzlement if, having received the money of the prosecuting witness to invest in a mortgage, he failed to account for it according to the nature of his trust. The guilt of the embezzler is that of a natural person, not of an agent or corporate officer. In whichever capacity he may have been acting, the defendant, as an individual, according to believable evidence, had complete control over the sum of $1,550 delivered to him by Mrs. Danneman and was at all times the bailee of that money until it was wrongfully converted. If, acting for the corporation or for his father, he exercised that control in such a way as to cause a misappropriation or conversion of the fund, then he was criminally liable. The corporation, in such a case, is to be regarded as the mere instrumentality through which the fraud is committed.

This view is supported by the well considered case of *Brown v. State*, 3 Ohio App. 52. The defendant, Carlotta Thompson Brown, the president of a corporation, was charged with embezzling moneys which had come into her possession as the agent of the prosecuting witness. The defendant's husband, an officer of the corporation, had received from the prosecuting witness certain shares of stock and receipted for them in the name of the company. The stock was sold and the proceeds deposited in the company's bank account, and the defendant drew checks on account to pay her own and the company's obligations. The defendant had no direct dealings whatsoever with the prosecuting witness. Answering the contention that no contract of employment or agency had been established between the defendant and the prosecuting witness, the court said:

"If it be conceded that the corporation, the Thompson-Brown Company, was the original agent employed by Schroth to sell his stock and that he had no acquaintance with or knowledge of the defendant below, it must be admitted that he realized that the corporation must necessarily act by its officers or employes, and while the defendant may have first obtained possession of the stock as an officer of the company, she at the same time became an agent of Schroth, acting for him as well as the company, and if she feloniously appropriated its proceeds she did so necessarily as an individual for her own benefit and that of the company. Such an appropriation would either constitute the crime of larceny or embezzlement, and as her possession was lawful in its inception, it becomes the latter crime and not the former."

A similar ruling was made in *Milbrath v. State*, 138 Wis. 354, 120 N. W. 252, 131 Am. St. Rep. 1012. There

the defendant was charged with embezzling the proceeds of a mortgage which was the property of a client of a corporation of which the defendant was president. He and one Wagner, co-defendants, were the sole stockholders of the company. They had formerly done business as partners and were so operating at the time they secured the execution of the mortgage for their client. After their incorporation the mortgage was paid to the corporation at its office. The defendant contended that it was the corporation and not the individuals who received and converted the money, but the court said:

"The corporation is in such a case a mere instrumentality through and by means of which the natural persons in control thereof carry out their acts."

The defendant further argued that it was not shown that he personally receipted for the money, and that the information charged a conversion, not to the use of the corporation but to the use of the persons who were its officers, including the defendant, while the proof showed that the money was converted by putting it into the treasury and mingling it with the funds of an insolvent corporation. To this the court answered that all this was done with the knowledge and under the direction of the defendant; that conversion to the use of the corporation was a conversion to his use. The money "is paid into that which is a mere instrumentality created by him under sanction of law, but as much under his control and as subservient to his will as the furniture of his office or the books of account in which he records his transactions. Under such circumstances there is no room for the legal sanction of separate corporate personality or for distinction between the defendant's acts as officer of the corporation and his acts as an independent natural person."

In *State v. Chapin*, supra, the prosecuting witness dealt with the defendants as officers of a corporation, and the embezzlement was accomplished through the medium of the corporation, and a conviction under an indictment substantially identical with that in the instant case was sustained. The question now under consideration was not, however, raised in that case.

■ The evidence here shows that the appellant, if he was acting as an officer of the corporation, was able to and did exert the whole power of the corporation as far as the money of Katherine Danneman was concerned, and that he exerted a similar power if acting as agent of his father; and in either case he was, to all intents and purposes, the custodian and bailee of the funds; and if he exerted that power to unlawful ends he cannot escape the consequences of his misconduct by taking refuge behind the shield either of the corporate entity or of his agency.

■ And this answers another contention of the appellant. It is argued that he is not charged as an officer of the corporation, and therefore that proof of embezzlement by the corporation does not support the indictment. We agree that the defendant is not charged as an officer of the corporation, and think that the recital in the indictment, "being the officers of a certain corporation", is surplusage. *Barnett v. State*, 54 Ala. 579, 584. Nevertheless, for the reasons above stated, the proof is in harmony with the allegations of the indictment.

■ (2) It is next contended that the appellant had no control over the fund alleged to have been embezzled, but that the bookkeeper and cashier, Eunice Partlow, had the entire control, and that it was she, not the appellant, who actually disbursed the money. The con-

tention is sufficiently answered by the uncontradicted testimony of Eunice Partlow, a competent witness, that "small accounts were just paid (out of the cash drawer) in the ordinary course of business—but any unusual accounts were authorized by Mr. Frank German, and the disbursements on loans were authorized by Mr. Frank German", and by the testimony of Katherine Danneman that the appellant told her that he had used her money to pay his father's bills.

■ (3) It is argued that the defendant did not violate Katherine Danneman's rights as bailor because she received the mortgage executed by Mr. and Mrs. Searles and claimed to own it; because, as Katherine Danneman admitted and contended in another proceeding, the Fred W. German Co. was the agent of Mr. and Mrs. Searles and not of herself; and, further, because the mortgage was made to her two sons and it was their rights, if anyone's, which were violated. The contentions are without merit because (a) the mortgage, which Mrs. Danneman received, being without consideration, was worthless, a mere scrap of paper; (b) the appellant, in receipting for the mortgage, did so in the name of Fred W. German Co. as agent for the mortgagees (Katherine Danneman's sons), and the whole tendency of the evidence supports the view that he was acting for Katherine Danneman, as the company had done from time to time over a period of seventeen years; and (c) it was Katherine Danneman's money, and not the money of her sons, which was embezzled.

■ (4) It is said that Eunice Partlow was an accomplice as a matter of law and that she is uncorroborated. We think that Eunice Partlow was not an accomplice as a matter of law, but, if she was, that there was sufficient corroboration. Omitting all reference to her

testimony, there is evidence that the appellant received money from Katherine Danneman to invest in a mortgage; that for nearly two weeks thereafter she was unable to see the appellant, although he had promised to deliver the mortgage to her on the day she paid him the money; that when she did see him and inquired about the mortgage he sought to reassure her by telling her that it was recorded, but failed to tell her that he had not paid the money to the mortgagor; that, although he had been entrusted with Mrs. Danneman's money for but one purpose, he did not pay it over to the agent of Mr. and Mrs. Searles when the mortgage was ready to be delivered to him, but had Liefch record the mortgage first; that, two weeks after the mortgage was executed, he falsely told Searles he was waiting for a certified check; that finally he admitted to Katherine Danneman that he had used her money for other purposes, and told Liefch that "We haven't got the money—we are broke", and that the money was never paid to the Searles, nor returned to Katherine Danneman. Even without his admission the circumstances here detailed, if believed by the jury, were sufficient to convince them of a studied purpose on the appellant's part to deceive both parties with whom he was dealing, and to put off the evil day when the facts of the embezzlement should be revealed. In our opinion that furnishes the requisite degree of corroboration under §13-935, Oregon Code 1930.

 The evidence does not conclusively show that Eunice Partlow was an accomplice in the crime. No matter what powers may have been conferred upon her as secretary-treasurer by the by-laws of the corporation, she would be liable only on account of what she did—not on account of what she was empowered to do.

*State v. Ross*, 55 Or. 450, 471, 104 P. 596, 106 P. 1022, 42 L. R. A. (N. S.) 601, 613. Mingling the money of Mrs. Danneman with other moneys in the cash drawer, without more, would not constitute embezzlement. The proof does not show how much money the corporation had on hand on November 13. The disbursements which Eunice Partlow made on that day, under the direction of the appellant, were, according to her testimony, elicited by appellant's counsel on cross-examination, proper and legitimate. There is no evidence of any exercise of control over the funds by Eunice Partlow after November 13. The case of *State v. Carr*, 28 Or. 389, 42 P. 215, cited by appellant, is wholly unlike this case because there the charge was bribery of a juror, and the witness, who was held to be an accomplice, was the wife of the juror who, according to her story, was solicited by the defendant to offer money to her husband to corruptly influence his vote and did so knowing the purpose to be accomplished. We think that under the evidence, at the very least, different inferences could be drawn as to the claimed connection of Eunice Partlow with the crime, and, that being so, the trial judge properly submitted to the jury for their determination the question of whether or not she was an accomplice.

 The witness, Katherine Danneman, was permitted to testify over the objection of appellant, that Fred W. German, the appellant's co-defendant, told her: "Frank German spent all of your money". We think that this ruling was error prejudicial to the rights of the defendant and necessitates reversal of the judgment. The testimony was hearsay. The alleged statement was not made in the presence of the appellant. The incident occurred nearly a month after the appellant

came into possession of the complaining witness's money, and there is not a syllable of evidence in the record that up to that time Fred W. German even knew of the transaction, much less that he took any part in the misappropriation. "An officer of a corporation is not criminially liable for the act of the corporation unless he participated in the wrongful act". *State v. Ross,* supra. There being no proof of concert of action, the evidence was not receivable as the declaration of a conspirator made while the conspiracy is in progress. *State v. Roach,* 35 Or. 224, 57 P. 1016. The notion that the statement was binding on the appellant because made by one officer of a corporation concerning the conduct of another with reference to a corporate transaction finds no support in the law. The state cites § 9-204, Oregon Code 1930, which reads: "The rights of a party cannot be prejudiced by the declaration, act, or omission of another, except by virtue of a particular relation between them." The particular relation there referred to is obviously that of principal and agent or something of a kindred character. An officer of a corporation is the agent of the corporation, but not of other officers, Clark and Marshall, Private Corporation, 2264, § 745; and, therefore, the declaration of one officer made out of the presence of another may not be received to bind that other, and this must be particularly true in a criminal case.

In view of further proceedings we deem it well to notice another assignment of error. During the cross-examination of a witness for the state the appellant offered in evidence the mortgage executed by George D. Searles and his wife. It was received without objection. Later, there was admitted in evidence over the appellant's objection, a certified copy of a decree

in a suit brought by George D. Searles and Laura Searles, his wife, against Walter Danneman and Henry Danneman (the sons of Katherine Danneman in whose favor the mortgage was executed) in the Circuit Court for Washington county, Oregon. By this decree the mortgaged property was freed of the defendants' lien, and the mortgage was declared to have been executed without consideration and void, and was cancelled.

There is much persuasiveness in the argument that, the appellant having introduced the mortgage in evidence, the state should be permitted to show that it had been cancelled, and we would not be prepared to hold that the admission of the decree was prejudicial error, in view of the fact that it was proven without contradiction that no consideration was given for the mortgage, and, therefore, that it was valueless. We have concluded, however, after careful consideration, that the general rule, that judgments and decrees in civil cases are inadmissible in evidence in criminal prosecutions, as proof of any facts determined by such judgments or decrees, is applicable (see annotation, 87 A. L. R. 1258) ; and, further, that the ruling of the court below is contrary to our own precedent in *Boord v. Kaylor*, 100 Or. 366, 377, 197 P. 296, the decree being *res inter alios acta*. Had there been any substantial controversy over the question whether the Searles had received the consideration, it seems manifest that the reception in evidence of this decree in a civil case to which the appellant was not a party would have been in prejudice of his rights. Under the circumstances of the instant case, the evidence was harmless, though the ruling, we think, was technically erroneous.

In view of the disposition to be made of the case, we deem it unnecessary to discuss the numerous other

contentions of the appellant. We have no doubt that the indictment is free from defect, and that the evidence is legally sufficient. But, for the error in admitting the evidence of the statement made by the defendant, Fred W. German, the judgment must be reversed and the cause remanded for a new trial, and it is so ordered.

RAND, C. J., and BELT and BEAN, JJ., concur.