Decided 27 July, rehearing denied 5 October, 1903.

## STATE v. NEILON.

[73 Pac. 321.]

SHERIFFS — EMBEZZLEMENT OF TAXES — ROLLS AS EVIDENCE — ESTOPPEL.

1. In a prosecution against a public tax collector for embezzling taxes the rolls delivered to him by the proper officials are competent evidence to show the amounts collected, though such rolls may not have been properly certified, or have had attached the statutory warrants, for the officer is estopped by his own conduct to deny that the rolls were enforceable.

ACTS OF DEPUTIES — PRESUMPTION AS TO DISPOSAL OF TAXES.

2. Where it appears that deputy tax collectors placed their collections with the other funds of the office, it will be presumed, even in a criminal case for embezzlement, that such funds came into the hands of the principal, and in a settlement of his accounts he should be charged with such sums.

PRESUMPTION AS TO MONEY PAID FOR TAXES BY CHECK.

3. Under a statute* requiring taxes to be paid in current gold and silver coin of the United States, and requiring tax collectors to give receipts for taxes so paid "as cash",† it will be presumed, in the absence of a contrary showing, that the tax collector cashed drafts, checks, or money orders which he received for taxes in lieu of coin, and hence such drafts, etc., are properly chargeable to him in a prosecution for embezzling moneys collected for taxes.

COMPETENCY OF EVIDENCE OF EMBEZZLEMENT OF TAXES.

4. Under Hill's Ann. Laws, ? 2797, requiring the sheriff to settle with the county treasurer once in every thirty days, and to pay over to that officer all moneys received for taxes, and the treasurer to give the sheriff duplicate receipts for the money paid over, one of which is required to be filed with the county clerk, in a prosecution against a sheriff for embezzling taxes collected, the sheriff's statements on which he had made settlements with the county treasurer, the treasurer's books, and the duplicate receipts so filed, are competent evidence of the amount accounted for by the sheriff, and are *prima facie* sufficient for that purpose.

EMBEZZLEMENT OF LAWFUL MONEY — NECESSARY PROOF.

5. Under an information charging embezzlement of lawful money of the United States, it must be proved that the money stolen was of the kind named.

---

*NOTE.—The statute here referred to is Section 2798, Hill's Ann. Laws, which is the same in the editions of 1887 and 1892. In 1901 the section was radically amended, but this decision is made under the reading before the amendment, which was as follows, so far as here involved: "All state, county, school and military taxes shall be paid in current gold and silver coin of the United States, except that county orders shall be received for county taxes in the county where issued, if offered before the time for returning the warrant," etc.

†NOTE.—The statute here considered is Section 2801, Hill's Ann. Laws, which is the same in both editions of that compilation, and, so far as here involved, reads as follows: "It shall be the duty of each and every sheriff in the several counties of this state, acting as tax collectors, upon the receipt of money for taxes, to give a receipt therefor, showing the amount paid in coin or currency as cash, and the amount paid in county orders; and the sheriff shall note separately upon each stub, as in the receipt, the amount of cash and county orders respectively received," etc.                                                   REPORTER.

EMBEZZLEMENT OF LAWFUL MONEY—SUFFICIENCY OF PROOF.

6. Where a sheriff was authorized to receive in payment of taxes only current gold and silver coin of the United States and certain county orders, and in a prosecution against him for embezzlement of money so received it was proved that he collected as taxes while in office, and paid over to the county treasurer, certain sums, leaving a balance unaccounted for, and that he and his deputies received for taxes gold, silver, and treasury notes, national bank notes, silver certificates, checks, money orders, and county warrants, the evidence sufficiently supported an allegation in the indictment that the money converted by defendant was "lawful money of the United States," though the particular coins converted were not indentified, for, in such cases, it is not necessary to show the character of the money converted, since presumably public officers receive only lawful money.

STATUTES RELATING TO EMBEZZLEMENT — CONSTRUCTION.

7. Section 1772, Hill's Ann. Laws, is a general statute for the punishment of persons who may receive public money and fail to account therefor, while section 1995 relates only to tax collectors who fail to perform certain stated duties; hence a sheriff who has been convicted of converting to his own use money received by him for taxes is punishable under section 1772.

From Klamath: HENRY L. BENSON, Judge.

A. J. Neilon, having been convicted of larceny of public money, appeals from the judgment.          AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Austin S. Hammond* and *Mr. Chas. A. Cogswell*, with an oral argument by *Mr. R. S. Taylor.*

For the state there was a brief and an oral argument by *Mr. Andrew M. Crawford*, Attorney-General, and *Mr. A. E. Reames*, District Attorney.

MR. JUSTICE BEAN delivered the opinion.

The defendant was sheriff of Lake County from July 5, 1898, to July 2, 1900, and Lane, Beall, and Houston were his deputies. During his term of office he and his deputies collected a large sum of money as taxes on the tax rolls for the years 1893 and 1899, inclusive, a portion of which it is averred he did not pay over to the county as required by law, but unlawfully and feloniously converted to his own use. He was arrested and charged, under Section 1772,* Hill's Ann. Laws, 1892, with the crime of larceny of public money; it being averred in the informa-

---

*Now Section 1807 of B. & C. Comp.

tion that on July 1, 1900, he did feloniously take, steal, and make away with and convert to his own use $6,461, lawful money of the United States and the property of Lake County, which he had received as tax collector, and which he feloniously and wrongfully neglected and refused to pay over to the county as by law required. He was tried and convicted as charged, the jury finding the amount of money which he failed to pay over to be $3,000. From the judgment entered on the verdict he appeals.

It is insisted that the court erred in admitting in evidence the tax rolls for the years 1893 to 1898, inclusive; proof that the defendant and his deputies collected money thereon as taxes; and the testimony of the experts as to the amount shown by the tax rolls, stubs, and reports of the defendant to the county treasurer, to have been collected by him as taxes.

1. The objection to the admission in evidence of the assessment rolls, and their use as testimony in determining the amount of money collected by the defendant, is that they were not properly certified to, and did not have annexed thereto legal warrants authorizing the defendant to collect taxes thereon. The evidence tended to show that these rolls were in the usual form, and came into the hands of the defendant as sheriff and tax collector of the county, and that as such officer he received and collected taxes thereon, giving proper receipts to the taxpayers. It is therefore, in our opinion, no defense to this prosecution for converting the money so collected to his own use that the rolls were not properly certified to, or did not have legal warrants attached authorizing the seizure and sale by the defendant of the property of the taxpayer to satisfy the tax; for, as said by the Supreme Court of Missouri in disposing of a similar question in a like prosecution, "it can make no difference in this proceeding whether the tax books were properly certified or not. The defendant re-

ceived and receipted for them, and the moneys collected in payment of taxes extended thereon were public moneys. They were none the less public moneys because the tax books may not have been duly certified": *State* v. *Findley*, 101 Mo. 217, 224 (8 Am. Crim. Rep. 194, 14 S. W. 185, 187). It has accordingly been held that a tax collector is an agent of the state, and, where he collects money as taxes, he will not be heard to urge, in defense to a suit for its recovery, that the money he received was on account of taxes which the legislature had no constitutional power to impose (*Waters* v. *State*, 1 Gill, 302); nor to question the regularity of the proceedings whereby the funds came into his possession (*Mason* v. *Fractional School Dist.* 34 Mich. 228); or the right of the county to receive them (*Village of Olean* v. *King*, 116 N. Y. 355, 22 N. E. 559); or that he was not legally chosen, or the assessment was defective and irregular: *Ford* v. *Clough*, 8 Me. 334 (23 Am. Dec. 513).

A public officer charged with the duty of collecting taxes is not permitted to deny his own power or right to make the collection after having exercised it. He will not be allowed to assert that a tax is chargeable against the tax-payer when he demands or receives it, and then say that it was not legally so when the state demands it from him, or when he is prosecuted criminally for its embezzlement. He must pay over the money so received as provided by law, and let the aggrieved party make his application to the proper authorities for reimbursement. He cannot assert that he retains the money as the representative of the taxpayer. There is no relation of principal or agent, or trustee and *cestui que trust,* existing between him and the parties from whom he received the money. They paid it in satisfaction of the taxes appearing against them on the tax rolls of the county, and the officer must be held accountable for it as such. There was, therefore, no error

in admitting the tax rolls in evidence, and using them as a basis for determining the amount collected by the defendant as taxes, even though the proceedings in the levy of the tax, or in the matter of the assessment rolls and returns thereon were so irregular and imperfect as to have been no justification to the sheriff if he had attempted to enforce the collection by legal process.

2. It is argued that the sums received by the deputies, Lane, Houston, and Beall, should not have been included in the amount alleged to have been collected by the defendant as taxes; but there was no error in this regard. These men were the duly appointed and acting deputies of the defendant, and collected the money in question as such. There was no contention, as we understand it, that they embezzled or converted any of it to their own use. Lane put what he collected in the sheriff's cash box in the county safe, from which payments were made from time to time to the county treasurer. The money collected by Houston was paid over to the county treasurer to the credit of the defendant. That collected by Beall was placed in the money drawer in the defendant's office. It is true the bill of exceptions recites that there was no evidence that any of the money collected by Lane or Beall ever came into the possession of the defendant, or that he knew that Beall ever made any such collections. But these men were his deputies, and he knew they were discharging the duties of such office. The money collected by them was mixed and mingled with the money of the office, and as such presumably came into his possession and under his control; at least, the jury were justified in so finding from the manner in which the business was conducted.

3. Again, it is contended that it was error to include in the amount with which the defendant should be charged $2,278.80, school taxes collected by him, and $7,561.21, paid to him in checks, money orders, and drafts. The en-

tire deficit, as the evidence tended to show, was something over $6,000, while the jury found that the amount which the defendant failed to pay over was only $3,000; so that the school tax was probably deducted by the jury, and may be eliminated from the discussion, although it is doubtful whether it would not be deemed the money of the county for the purposes of this prosecution : *State* v. *Hays*, 78 Mo. 600. The checks, drafts, and money orders were, as the bill of exceptions recites, received by the defendant and his deputies "for taxes" and "in collecting taxes," but there was no evidence to show what was done with them, except that Lane testified that those taken by him were cashed, and the money paid into the county treasury. The law in force during defendant's incumbency of the office of sheriff required that all taxes should be paid in "current gold and silver coin of the United States," except that county orders might be received under certain conditions and limitations (Hill's Ann. Laws, 1892, § 2798), and that the sheriff should give to the taxpayer a receipt, showing the amount paid "as cash," and note the same upon the stub or duplicate of such receipt retained in his office (Hill's Ann. Laws, § 2801). It was therefore the duty of the defendant to receive as taxes only gold and silver coin of the United States and county warrants. If, for the accommodation of the taxpayer, he chose to take drafts, checks, or money orders, they were received in lieu of coin, and when they were cashed by the defendant the money became the property of the county, and he was bound to pay over and account for it the same as any other money received by him : *Adams* v. *People*, 25 Colo. 532 (55 Pac. 806). It is true the bill of exceptions recites that there was no evidence as to what was done by defendant with the checks and drafts; but, in the absence of a showing to the contrary, the jury were justified in finding that they were by the defendant converted into money, on the presumption

that the usual course of business was pursued: B. & C.
Comp. § 788, subd. 20. It is common knowledge that a
great proportion of the taxes of the country are paid in
checks, drafts, and money orders, and that such paper
is converted by the officer into money. It is but fair to
presume that such was the course of procedure by the
defendant.

4. It is argued that there was no evidence that the de-
fendant did not pay over to the county treasurer all the
money received by him. The law required the defendant,
as sheriff, to settle with the county treasurer once in every
thirty days, and to pay to that officer all money received
on taxes from any tax list in his hands for collection, the
treasurer being required to give him duplicate receipts for
the money so paid over, one of which he was to file with
the county clerk: Hill's Ann. Laws, 1892, § 2797. The
statements of the defendant upon which he made his various
settlements with the county treasurer, the books of that
officer, and the duplicate receipts filed in the office of the
county clerk, were all introduced in evidence, and were
sufficient to show, *prima facie* at least, the amount of money
paid over and accounted for by him. The presumption is
that official duty was regularly performed, that the treas-
urer's books were correctly kept, that he gave receipts to
the defendant for all taxes paid to him, and that such
receipts were filed in the clerk's office: *City of Portland*
v. *Besser*, 10 Or. 242. The manner in which the business
seems in fact to have been transacted was sufficient, no
doubt, to weaken this presumption and to impair the value
of the evidence; but it did not destroy its competency.
The weight to be given to the testimony was a matter for
the jury.

5. The information charges that the money which it is
alleged the defendant converted to his own use and failed
to pay over was lawful money of the United States, and it

is argued that, while it was not necessary for the state to
have alleged that fact, it must be proven as alleged.   It
has been held that, under an indictment charging larceny
of lawful money of the United States, it is incumbent
upon the prosecution to prove that the money stolen was
of the kind and character described in the indictment:
*Hamilton* v. *State*, 60 Ind. 193 (28 Am. Rep. 653); *Vale* v.
*People*, 161 Ill. 309 (43 N. E. 1091); *Gerard* v. *State*, 10 Tex.
App. 690.  Within this rule the defendant should have
been acquitted unless the evidence tended to show, either
directly or by inference, that the money embezzled by him
was lawful money of the United States.

6. Now, the bill of exceptions contains a statement that
"there was no evidence tending to show that any money
which the defendant may have failed to pay over to the
county treasurer, which he or his deputies collected on ac-
count of taxes, was lawful money of the United States."
If this statement stood alone, we would probably be com-
pelled to reverse the judgment; but it must be interpreted
in the light of the entire bill of exceptions, and when so
read it means nothing more, it seems to us, than that there
was no testimony tending to show that the particular coin
or coins which the defendant failed to pay over were lawful
money of the United States.    But that character of proof
is not necessary in a prosecution of this kind : *State* v. *Car-
rick*, 16 Nev. 120, 124; *State* v. *Smith*, 13 Kan. 274, 295.
In a prosecution against a public officer for embezzlement,
it is sufficient to prove the felonious conversion by him to
his own use of any money that came into his possession or
was under his control by virtue of his office, without iden-
tifying the particular kind and character of money.   If
the law required the kind and character of money embez-
zled and the particular date of embezzlement to be proved,
it would practically be an effectual bar to any prosecution
of such an officer for the wrongful and unlawful conver-

sion to his own use of public funds. The officer is the only person who knows the kind and character of money in his custody or under his control. The public at large can exercise no supervision over his acts, nor can it, like an individual, assume direct custody of the funds. It is therefore sufficient to show that he received money belonging to the state or county by virtue of his office, which he wrongfully and unlawfully converted to his own use ; and, where he is presumed to receive only lawful money of the United States, it will be presumed that the money embezzled was of that character until the contrary is shown.

It clearly appears from the bill of exceptions that there was competent evidence tending to show that the defendant collected as taxes from the various taxpayers of the county, during the time he was in office, the sum of $94,-758.19, and that he only paid over to the county treasurer $88,125.67, leaving a balance unaccounted for of $6,632.52 ; that "for taxes he and his deputies received gold, silver, and treasury notes, national bank notes, silver certificates, checks, money orders, and county warrants." All these several items were received by the defendant in payment of taxes, as the agent or representative of the county, and if the checks, drafts, and money orders, etc., were by him converted into money (and that was a question for the jury), it was the money of the county, which, if he converted to his own use, could properly be described in an indictment or information as lawful money of the United States. We think, therefore, that the bill of exceptions, as a whole, does show that there was evidence from which the jury could properly find that the money converted by the defendant was lawful money of the United States, although there may have been no evidence tending to identify the particular coin or coins so converted. This was evidently the view of the trial judge, otherwise, he would have directed a verdict of acquittal.

He was particular to charge the jury that they could not find the defendant guilty unless they believed that the money was lawful money of the United States, and that the only money coming within that term is "coins of the United States and United States treasury notes, commonly called 'greenbacks';" that checks, drafts, money orders, and bank notes are not lawful money of the United States; and that they could not find the defendant guilty unless they believed that he converted or failed to account for United States coins or treasury notes, commonly called "greenbacks."

7. It is contended that because the jury did not find that the defendant converted the money to his own use, but only found that he failed to pay it over, the crime of which he was guilty is that defined by Section 1995,* and not Section 1772,† Hill's Ann. Laws, 1892, and that he should have been sentenced accordingly. It may be conceded that, where criminal statutes provide different penalties for the same offense, the later one will govern and control if the penalty therein provided is less than that in the earlier statute: *Commonwealth* v. *Kimball*, 21 Pick. 373; *Commonwealth* v. *Davis*, 11 Gray, 48; *Huber* v. *State*, 25 Ind. 175; *Hayes* v. *State*, 55 Ind. 99. But the two statutes in question do not relate to the same matter nor provide for the punishment of the same offense. Section 1772 is a general statute, providing for the punishment of any person who shall receive any money whatever for the state or county, and convert the same to his own use, or shall feloniously neglect or refuse to pay it over as by law directed and required. Section 1995 is section 19 of the act of October 21, 1864 (Deady's Gen. Laws, p. 908, § 49), providing for the collection of taxes, and is confined

---

*This is B. & C. Comp. § 3115.

†This is B. & C. Comp. § 1807.

*43 Or.—12.*

to the specific offenses therein enumerated. By section 4 of that act it is made the duty of the sheriff to pay over to the county treasurer, at least once a month, all money collected by him as taxes, and, by sections 15 and 16, to make out and return to the county clerk, by a certain date, a statement of delinquent taxes. Section 19 provides for his punishment in case he fails to do either. It is not a general statute, designed to apply to an officer who feloniously fails or neglects to account for or pay over to the proper authorities money received by him belonging to the state, but is only for the punishment of a sheriff who fails to make monthly settlements with the county treasurer, or neglects to make out the delinquent list, as required by the act: *State* v. *Dale*, 8 Or. 229. Finding no error in the record, the judgment of the court below is affirmed.                              AFFIRMED.

Decided 8 June, 1903.