Submitted on brief October 10, reversed October 17, 1916.

## STATE v. MISHLER.

(160 Pac. 382.)

**Indictment and Information—Following Language of Statute—Conversion by Trustee.**

1. An indictment charging that defendant, being trustee of certain money for benefit of M., did, with intent to defraud, unlawfully convert it to his own use and benefit, being in the language of Section 1962, L. O. L., denouncing the crime of wrongful conversion of property by a trustee, is sufficient.

[As to when the charge of crime in indictment may be in language of the statute, see note in 94 Am. Dec. 253.]

**Embezzlement—Indictment—Description of Money—Conversion by Trustee.**

2. It is enough for an indictment under Section 1962, L. O. L., for conversion by a trustee to charge the conversion of "$10,000," without alleging what kind of money it was; Section 1448, subdivision 6, declaring an indictment sufficient if the act charged as a crime is stated with such a degree of certainty as to enable a person of common understanding to know what is intended.

From Marion: PERCY R. KELLY, Judge.

In Banc. Statement by MR. JUSTICE McBRIDE.

The defendant, Adam J. Mishler, was indicted under Section 1962, L. O. L., for the crime of wrongful conversion of property by trustee. Said section is as follows:

"If any person, being the trustee of any property for the benefit of another, or for any public or charitable use, shall, with intent to defraud, by any means convert the same or any portion thereof to his own use or benefit, or to the use and benefit of another not entitled thereto, such person, upon conviction thereof, shall be punished by imprisonment in the county jail not less than three months nor more than one year, or by fine not less than $50 nor more than $1,000."

The material part of the indictment is as follows:

"Adam J. Mishler is accused by the grand jury of the county of Marion and State of Oregon, by this

indictment, of the crime of conversion by trustee committed as follows: The said Adam J. Mishler on the 25th day of July, A. D. 1914, in the county of Marion and State of Oregon, then and there being the trustee of $10,000 for the benefit of Henry J. Miller, did then and there with the intent to defraud unlawfully convert said $10,000 to his own use and benefit.''

There was a demurrer on the ground of insufficiency, which being sustained, the state appeals.

REVERSED.

For plaintiff-appellant there was a brief submitted over the name of *Mr. Ernest R. Ringo,* District Attorney.

For defendant-respondent there was a brief prepared by *Mr. Julius N. Hart.*

MR. JUSTICE McBRIDE delivered the opinion of the court.

1. While the indictment is so meager in its statement of the acts constituting the offense that it comes very close to the line, we think it is sufficient. The offense is clearly a creature of the statute, and we have held that, as a general rule, it is sufficient in such cases to charge the facts constituting the offense in the language of the statute: *State* v. *Carr,* 6 Or. 133; *State* v. *Ah Sam,* 14 Or. 347 (13 Pac. 303); *State* v. *Lee,* 17 Or. 488 (21 Pac. 455); *State* v. *Light,* 17 Or. 358 (21 Pac. 132); *State* v. *Shaw,* 22 Or. 287 (29 Pac. 1028); *State* v. *Carmody,* 50 Or. 1 (91 Pac. 446, 1081, 12 L. R. A. (N. S.) 828). There are no adjudicated cases in this state directly involving this particular statute, but in cases of larceny by bailee, which offense is similar and closely akin to the crime here charged, we find frequent decisions to the effect that it is sufficient to

charge the offense in the words of the statute: *State* v. *Thompson,* 28 Or. 296 (42 Pac. 1002) ; *State* v. *Chapin,* 74 Or. 346 (144 Pac. 1187). If in a case of larceny by bailee it is unnecessary to set out in the indictment the nature of the bailment or the circumstances under which the accused became bailee, it would seem equally unnecessary in an indictment for the unlawful conversion of money by a trustee to set up the facts or circumstances by which the defendant became trustee or to allege the precise way in which he converted the money to his own use. Whether he bought property with it, lost it at cards or contributed it to charity is not material if he actually converted it, and the manner in which it was disposed of or converted would in many, if not most, instances be known only to himself. For fraudulent conversion of money by an agent, Mr. Bishop, in Directions and Forms, Section 408, gives the following precedent:

"That before the finding of this indictment, A., etc., being the agent or clerk of X., the said X., not being an apprentice, or under the age of eighteen years, embezzled, or fraudulently converted to his own use, money to about the amount of eighteen hundred dollars, and a bill of exchange to about the amount of eighteen hundred dollars, which came into his possession by virtue of his employment, against the peace," etc.

The indictment here substantially follows the form quoted, leaving out the allegation "not being an apprentice or under the age of eighteen years," which seems to have been a statutory exception in the State of Alabama, from which state the form given by Mr. Bishop was adopted.

2. The next objection, and one upon which the authorities disagree, is that the indictment fails to specify the kind of money converted. It is urged that as the

indictment simply alleges that the defendant converted $10,000, and does not state that such sum was of any value or was lawful money of the United States, there is room for the intendment that it was composed of "dollars" of Mexico, Confederate money, or worthless currency of some foreign country. We will first consider this contention upon principle. Our statute (subdivision 6, Section 1448, L. O. L.) provides, in substance, that the indictment shall be sufficient if the act charged as a crime is stated with such a degree of certainty as to enable a person of common understanding to know what is intended. Now, what does a "person of common understanding" actually understand when he hears the term "dollar" applied to a financial transaction? If he goes into a store and inquires the price of a coat and is told that it is $20, he does not inquire whether the salesman means $20 in Confederate money, Mexican money, or currency, or in Peruvian currency. He understands and knows that the currency of this country is meant. The laws of this country at one time recognized the Mexican dollar and made it current, but that law is now repealed and we recognize but one kind of dollar, the American dollar, which, considered either as a single coin or as a unit of value, is current for 100 cents and represents 100 cents of the currency of the United States. How much more information would the defendant here have had if the indictment had followed the ancient forms and charged that he "converted to his own use ten thousand dollars of the coins and currency of the United States of the value of ten thousand dollars, the particular denomination of said coins and currency being to the grand jury unknown"? Manifestly none. The allegations would have been as useless as "not having the fear of God before his eyes," or "being

instigated by the devil," which our forefathers deemed
so essential to a good indictment; nor could it preju-
dice the defendant upon the trial.  If under this in-
dictment the state had undertaken to show that the de-
fendant converted ten thousand so-called dollars of
Confederate money or other foreign currency, the tes-
timony would have been promptly rejected on the
ground that our law recognized no such "dollars," and
that the indictment must be taken to mean American
money.  In larceny, either statutory or at common
law, there were reasons for describing the coins taken.
One reason was because in larceny it was sometimes
essential to identify the particular coins taken.  If, for
instance, a $20 gold piece and a half dollar were taken
from the person of A, and B, previously impecunious,
was found with a $20 gold piece and a silver half dol-
lar in his possession, this fact might, in connection with
other circumstances, tend to identify him as the thief,
and it was deemed proper, therefore, to give the de-
fendant notice so far as possible of the exact descrip-
tion of the property he was charged with having stolen.
This was especially true with respect to property other
than money in those cases where the punishment of the
offense depended upon the amount or value of the thing
stolen.  Even in such cases it has not been deemed
essential to state that the value of the property was a
particular sum in United States money.  Thus, in form
No. 11, page 1012, L. O. L., we find the statutory form
for an indictment for larceny is as follows:

"Feloniously took and carried away a gold watch
(or as the case may be), the personal property of C. D.
* * of the value of more than $35."

The word "dollars" means money in the form of
the lawful currency of the United States: *United States*
v. *Van Auken,* 96 U. S. 366 (24 L. Ed. 852).  The word

"dollar" means a certain amount of money and is of some value. An information for false pretenses which alleges that the accused with intent to defraud prosecutor obtained from prosecutor the sum of $20, the property of prosecutor, is not objectionable as failing to allege that the money was worth something: *State v. Ryan,* 34 Wash. 597 (76 Pac. 90). This was a prosecution for obtaining money under false pretenses, and the opinion of the court is not only in point upon the exact question here under discussion, but also sustains our view upon the other questions discussed in this opinion, and is from a state whose statute contains provisions similar to ours concerning the certainty required in indictments: See, also, *People v. Millan,* 106 Cal. 320 (39 Pac. 605); *Oliver v. State,* 37 Ala. 134; *State v. Wilkerson,* 98 N. C. 696 (3 S. E. 683); *United States v. Fuller,* 5 N. M. 80 (20 Pac. 175); *Territory v. Hale,* 13 N. M. 181, 186 (81 Pac. 583, 13 Ann. Cas. 551, 584). The case last cited contains a very full discussion of the whole subject, from which we quote the following:

"But there is no allegation of the value of the money embezzled. The statute fixing the punishment regulates the same according to the value of the property embezzled, and, consequently, the value of the money must in some way appear in the indictment and proof. If it appears in this case, it appears by reason of the use of the words, 'dollars, in money.' The question, but arising under the postal laws of the United States, was before this court in *United States v. Fuller,* 5 N. M. 80 (20 Pac. 175). The indictment in that case was founded upon the clause of Section 5467, Rev. Stats. U. S., which condemns the embezzlement of any letter or packet containing 'any other article of value,' and alleged the letter to contain 'eight hundred dollars,' without further description or allegation of value. In answer to the contention

of counsel for appellant in that case the court said: 'If the packet had contained any other article to which the law fixes no certain value, then this would undoubtedly be true. For instance, a piece of jewelry. The law places no value on such article. Its value, if any, is regulated entirely by the usage of trade, and the law of supply and demand, and such value should be laid in the indictment, in the current money of the country, made by law the standard or unit of value. To charge that eight hundred dollars is of the value of eight hundred dollars, would add no force or weight to the indictment. It would not make the charge stronger, nor would it give the defendant any more information of the nature and cause of the accusation against him than is contained in this indictment.' (The quotation, differing slightly from the printed report, is taken from the original opinion on file in this court.) It is here announced, in effect, that the word 'dollar' used in an indictment purports value and obviates the necessity of such an allegation. It is further said, in effect, that alleging a given number of dollars is alleging the same number of dollars in value. That case differed from this in that there are no grades of the offense under the federal statutes while under our statutes the offense has two grades according as the amount embezzled is less or more than a specified sum: Sections 1126, 1187, C. L. 1897. But if the allegation of so many dollars is an allegation of the same number of dollars in value, the difference between the two cases is of no importance. We are compelled, therefore, to hold the indictment in this case sufficient in this particular or depart from the holding in the Fuller Case. This we are not inclined to do. This view finds support in a few cases (*State v. Alverson,* 105 Iowa, 152 [74 N. W. 770]; *Gady v. State,* 83 Ala. 51 [3 South. 429]; *Warren v. State,* 29 Tex. 369); but we recognize it to be a departure from the current of authority, at least in cases arising under state or territorial statutes (2 Bish. Cr. Proc., §§ 320, 713; Wharton, Crim. Pl. & Pr., §§ 213–218; *Brown v. People,* 173 Ill. 34 [50 N. E. 106]; *State v.*

*Stimson,* 24 N. J. Law, 9; *Bork* v. *People,* 16 Hun [N. Y.], 476; *Reside* v. *State,* 10 Tex. App. 675; *Grant* v. *State,* 35 Fla. 581 [17 South. 225, 48 Am. St. Rep. 263]; *State* v. *Thompson,* 42 Ark. 517; *People* v. *Donald,* 48 Mich. 491 [12 N. W. 669]; *Stephens* v. *State,* 53 N. J. Law, 245 [21 Atl. 1038].) It may be said, however, that this rule in regard to allegation of value, founded in reason as it is, and inflexible so far as concerns all property except money, has little reason to support it in a country like ours, where all forms of money are by law and in fact of uniform value. It becomes a mere naked rule of law, serving no useful purpose and affording persons charged with the larceny or embezzlement of money no additional safeguard against unjust conviction."

In the case last mentioned an officer was indicted for the embezzlement of public funds, in which cases some of the courts seem to hold that less particularity is required in describing the kind and value of the money converted than in those where the victim was a private individual; but in a case like the present it is difficult to see why a *cestui que trust* should be in any better position to know what particular description of coins or money his trustee had in his hands than the general public has of knowing the same fact when the money is received and embezzled by a public officer. The case of *Territory* v. *Hale,* 13 N. M. 181, 186 (81 Pac. 583, 13 Ann. Cas. 551, 584), mention the distinction only to show that it is immaterial, and in most of the cases cited above the victim was a private person.

Many cases hold the contrary view following the common-law rule, which has long been done away with in England by statute, and, as above shown, discredited by the latter authorities in this country as obsolete and having no foundation in reason.

The judgment of the Circuit Court is reversed and the cause remanded for trial.

REVERSED AND REMANDED.