Argued February 28, affirmed March 13, 1928.

# STATE v. GERALD GERRITSON ET AL.

### (265 Pac. 422.)

**Licenses—Preorganization Subscriptions for Financing Prospective Corporations are Within Blue Sky Law (Laws 1923, p. 271).**

1. Preorganization subscriptions to corporate stock taken for financing a prospective corporation are nevertheless in violation of Blue Sky Law (Laws 1923, p. 271), where no permit or license to sell is secured.

**Licenses—Defendants Accused of Selling Corporate Stock Without License Held not Relieved by Fact That One Defendant Subscribed for Stock as Trustee (Laws 1923, p. 271).**

2. In prosecution under Blue Sky Law (Laws 1923, p. 271), for selling or offering for sale corporate securities without license, fact that one of defendants subscribed for large shares of stock as trustee and that collections in payment thereof were payable to trustee *held* not to relieve defendants from liability.

**Licenses—Sale of Stock in Newly Organized Corporation was Completed on Delivery of Stock Certificate, in Prosecution for Selling Securities Without License (Laws 1923, p. 271; Or. L., §§ 6838, 6839).**

3. In prosecution under Blue Sky Law (Laws 1923, p. 271; Or. L., §§ 6838, 6839), for sale of corporate stock without license, sale of corporate securities of newly organized corporation was completed when stock certificate was delivered; subscription to stock being a continuing offer, which culminates in completed sale when offer is accepted by receiving the money.

**Licenses—Transaction by Which Stock was Offered, Accepted and Subscriber's Money Received and Retained and Certificate of Stock Issued Constituted Both "Offer to Sell" and Actual "Sale," Within Blue Sky Law (Laws 1923, p. 271; Or. L., §§ 6838, 6839).**

4. Where defendants' offer to sell stock to prosecuting witness was accepted by him and his money received and retained and a certificate of stock subsequently issued, transaction constituted both an offer to sell and an actual sale within purview of Blue Sky Law (Laws 1923, p. 271; Or. L., §§ 6838, 6839), denouncing offering for sale of corporate securities without license.

**Indictment and Information—Indictment may Charge Defendant With Committing All of Acts Which Statute in Alternative Form Forbids.**

5. Where statute forbids several things in the alternative, it is usually construed as creating but a single offense, and indictment

3. Nature of stock subscription, see note in 136 **Am. St. Rep.** 737. See, also, 7 **R. C. L.** 222.

may charge defendant with committing all the acts, using conjunction "and" where the statute uses the disjunctive "or."

Indictment and Information—Indictment Charging Defendants With Selling and Offering for Sale Corporate Securities Without License Held to Charge Single Offense (Laws 1923, p. 271; Or. L., §§ 6838, 6839).

6. Indictment under Blue Sky Law (Laws 1923, p. 271; Or. L., §§ 6838, 6839), charging that defendants engaged in selling and offering for sale certain securities without having received permit or license from the corporation commissioner, *held* to state single offense, though offer for sale alone would constitute violation of statute.

Licenses—Provision of Blue Sky Law Preventing Individual Stockholder from Disposing of Stock in Repeated and Continuing Transactions Without License Held Valid (Laws 1923, p. 271).

7. Blue Sky Law (Laws 1923, p. 271), denouncing the sale of corporate securities without first securing license *held* not unconstitutional as to provision of statute which prevents owner of stock as an individual from disposing of stock in repeated and continuing transactions of a similar nature.

Licenses—Law Prohibiting Sale of Securities Without Permit Held not Void as Giving Corporation Commissioner Arbitrary Powers (Laws 1923, p. 271; Or. L., § 6841).

8. Blue Sky Law (Laws 1923, p. 271), denouncing sale of securities without permit, *held* not void as giving corporation commissioner arbitrary powers, since courts are authorized to review powers so exercised under Section 6841, Or. L.

Constitutional Law—Court Passes on Legislation Only to Determine Whether It Conform With Fundamental Law.

9. Court cannot pass upon the soundness of legislation any further than to inquire into its conformity with fundamental law of the state.

---

Indictments and Informations, 31 C. J., p. 765, n. 35, p. 789, n. 91. Licenses, 37 C. J., p. 271, n. 55, p. 276, n. 28, p. 279, n. 71, 73.

From Multnomah: ROBERT TUCKER, Judge.

Department 1.

The defendants are charged with violating Chapter 189, General Laws of Oregon, 1923. The indictment reads as follows:

---

6. Indictment for violation of Blue Sky Law, see notes in 24 A. L. R. 535; 27 A. L. R. 1117.

7. Validity and construction of Blue Sky Laws, see notes in Ann. Cas. 1916A, 706; Ann. Cas. 1917C, 650; L. R. A. 1917F, 524; 15 A. L. R. 262; 24 A. L. R. 523; 27 A. L. R. 1169; 30 A. L. R. 1331; 40 A. L. R. 1014.

"Gerard Gerritson, E. E. Oppelt, and Ross W. Watt are accused by the Grand Jury of the County of Multnomah, and State of Oregon, by this Indictment of the crime of UNLAWFULLY OFFERING CORPORATE SECURITIES FOR SALE, committed as follows:

"The Oregon-Washington Sugar Corporation, a corporation, and the said Gerard Gerritson, E. E. Oppelt and Ross W. Watt, on the 16th day of June, A. D. 1926, in the County of Multnomah and State of Oregon, then and there being, were then and there engaged, and did then and there engage in the selling and offering for sale certain securities, to-wit: corporate stock and corporate certificates of the Oregon-Washington Sugar Corporation, a corporation, in the course of repeated and continuing transactions of a similar nature, and to the public, said Oregon-Washington Sugar Corporation being then and there a corporation duly organized, existing and doing business under the laws of the state of Oregon, and the said Oregon-Washington Sugar Corporation, a corporation, and the said Gerard Gerritson, E. E. Oppelt and Ross W. Watt, and each of them, on the said 16th day of June, 1926, in the County of Multnomah, State of Oregon, then and there being, were then and there dealers in said securities of the said Oregon-Washington Sugar Corporation, a corporation, and did then and there unlawfully and feloniously offer for sale and sell to one Frank Klekar, at the same time and place, the following securities, to wit: Twenty-five shares of the capital stock of the said Oregon-Washington Sugar Corporation, a corporation, neither the said Oregon-Washington Sugar Corporation, a corporation, nor the said Gerard Gerritson, nor the said E. E. Oppelt, nor the said Ross W. Watt ever having received from the Corporation Commissioner of the State of Oregon a permit or license to sell or offer for sale, said securities, or any thereof; and said securities not being then and there (a) mortgages purchased and sold, or purchased or sold in their entirety; or (b) commercial paper or acceptance eligible for rediscount at

a Federal Reserve Bank; or (c) state, or National Bank or trust company stock; or (d) securities listed on the New York or Chicago stock exchanges, or securities of companies not objected to by the Corporation Commissioner or listed in any standard manual or supplements thereto, or securities of subsidiary companies, or successors of listed companies not objected to by the Corporation Commissioner; or (e) bonds or other evidence of indebtedness of the United States of America, or of any foreign government or political subdivision thereof, or of any state or territory of the United States of America, or of any municipal or public corporation of such government, state or territory, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.

"Dated at the City of Portland, in the County aforesaid, this 4th day of June, A. D. 1927.

> "STANLEY MYERS,
> "District Attorney.
> "By JOHN MOWRY,
> "Deputy."

Defendants were convicted and sentenced to pay a fine of $1,000, from which judgment they have appealed. There were some fourteen exceptions taken at the trial. They contend here that the court erred in the following five particulars: First, preorganization subscriptions for financing a prospective corporation are not a violation of said Chapter 189; second, even though ordinary preorganization subscriptions require compliance with the Blue Sky Law the facts developed in this case do not bring it within that statute; third, that defendants did not commit the crime charged in the indictment; fourth, refusal of the court to require the state to elect which of the two crimes charged in the indictment the state would rely upon; fifth, that portion of the Blue Sky Law

relative to the individually owned stock of an individual is unconstitutional.                    AFFIRMED.

For appellants there was a brief over the names of *Mr. Thomas B. Handley, Messrs. Jaureguy & Tooze* and *Mr. Tom Garland,* with oral arguments by *Mr. Nicholas Jaureguy* and *Mr. Handley.*

For respondent there was a brief over the names of *Mr. Stanley Myers,* District Attorney, and *Mr. Jay H. Stockman* and *Mr. Francis T. Wade,* Deputy District Attorneys, with oral arguments by *Mr. Stockman* and *Mr. Wade.*

COSHOW, J.—1. The first contention of defendants cannot be sustained.

The contrary view was announced by this court in *State* v. *Whiteaker,* 118 Or. 656 (247 Pac. 1077), in an opinion by Mr. Justice BELT, in page 661:

"There is more reason for the application of this law to unorganized business concerns than to those having a recognized legal entity. The corporation commissioner would undoubtedly be more hesitant in granting a permit to sell 'securities' in a future or contemplated business enterprise than in an established and going concern. There is more uncertainty and speculation in the former class of investment."

To the same effect is *National Bank of the Republic* v. *Price,* 65 Utah, 57, 234 Pac. 231.

2. The defendants claim that because one of the defendants subscribed for a large share of the stock as trustee and the collections in payment thereof were payable to said trustee, that the defendants are not liable. This contention is contrary to the law: *Pennicard* v. *Coe, ante,* p. 423 (263 Pac. 920); *Bond* v. *Coe, ante,* p. 440 (263 Pac. 924); *Moe* v. *Coe, ante,*

124 Or.—34

p. 436 (263 Pac. 925), all decided by this court January 31, 1928.

3. It is earnestly contended that because the evidence shows that the securities involved in this litigation were offered for sale prior to the organization of the corporation that defendants cannot be guilty of violating the Blue Sky Law. The corporation whose stock was sold was the Oregon-Washington Sugar Corporation, organized May 15, 1926. The indictment charges the defendants with having sold the certificates of that company in July, 1926. This clearly shows that the sale was not consummated until after the corporation was organized. It has been well said that a subscription to the stock of a corporation in process of organization is a continuing offer which culminates in a completed sale when the offer is accepted by receiving the money whether or not the certificate is actually delivered to the subscriber: 1 Thompson, Corp. (3 ed.), 823, § 587.

In this case the certificate of stock was actually delivered for the money paid prior thereto. A certificate was given to the purchaser by defendant Gerritson as trustee of the refinery development fund which stated that the money received in payment of the shares of stock in the proposed corporation would be refunded if the sugar refining corporation was not organized in due time in accordance with the corporation laws of the State of Oregon. There was a completed sale of the corporate securities when the stock certificate was delivered: *Hamlin County L. S. P. Co.* v. *Karlstad*, 48 S. D. 82 (202 N. W. 141).

4. The language of the statute includes offers for sale. Section 6838 contains this language:

"The word 'dealer' * * shall include every person, partnership, corporation, or association which is now engaged, or which shall hereafter engage, * *

in the buying for the purpose or in the contemplation of so selling, any stocks, bonds, * * ''

Section 6839 provides:

''No dealer shall in this state offer for sale, or promote for advertisement, circular or any other form of public or general offering the sale of any corporate securities to be hereafter issued unless prior thereto there shall have been filed with the corporation commission: * * ''

There was evidence that the stock in the proposed corporation was offered for sale by the defendants. There was evidence that the defendants had a list of a large number of persons to whom they had either offered to sell or had in contemplation of offering to sell. There was evidence that the offer to the prosecuting witness Klekar was accepted by him, his money received and retained and a certificate of stock thereafter issued. This transaction constitutes both an offer to sell and an actual sale: *People* v. *Curtis,* 233 Ill. App. 13; *State* v. *Fraser,* 105 Or. 589 (209 Pac. 467).

5, 6. The court did not err in refusing to require the state to elect the particular offense upon which it would rely in the prosecution. There is only one offense charged and only one offense was attempted to be proved.

''Where a statute forbids several things in the alternative, it is usually construed as creating but a single offense, and the indictment may charge the defendant with committing all the acts, using the conjunction 'and' where the statute uses the disjunctive 'or.' Citing 1 Bishop's Criminal Procedure, 819.'' *People* v. *Curtis,* 233 Ill. App. 13, 19.

This principle is analyzed and explained in *State* v. *Laundy,* 103 Or. 443, 468 et seq. (204 Pac. 958, 206 Pac. 290), by former Mr. Justice HARRIS, with his

accustomed clarity and thoroughness. Other cases holding the same principle are *State* v. *Fraser,* above; *State* v. *Mishler,* 81 Or. 548 (160 Pac. 382); *State* v. *Clark,* 46 Or. 140 (80 Pac. 101); *State* v. *Fiester,* 32 Or. 254 (50 Pac. 561). This rule of law seems to be universal: *Habersham* v. *State,* 80 Fla. 240 (85 South, 655); *Laroe* v. *State,* 30 Tex. App. 374 (17 S. W. 934); *State* v. *Rowen,* 104 Or. 1 (200 Pac. 901); *Commonwealth* v. *Eaton,* 32 Mass. (15 Pick.) 273.

We do not believe that two different crimes are stated in the indictment. We think the defendants are charged with only one offense. There are two different statements of the way in which this offense was committed. Either statement standing alone would constitute a crime; but both statements combined would be only one offense. If only one of the ways in which the defendants are charged with having violated the act had been alleged and they had been tried upon that one charge, they could not thereafter have been tried on an indictment charging another violation of the act based upon the same transaction. In this case the same transactions are relied upon to prove the defendants guilty of violating the Blue Sky Law. The two ways in which they are charged with that violation are expressed in the indictment as one crime, not as constituting two offenses.

7. It has been determined that the Blue Sky Law is constitutional both by this court and the Supreme Court of the United States where similar statutes from other states are involved. The defendants contend that only one feature of the Blue Sky Law is unconstitutional, that one feature being the provision in the statute preventing the owner of stock as an individual from disposing of the stock in repeated and

continuing transactions of a similar nature. This contention has already been passed upon by this court adverse to the defendants. In *State* v. *Barrett,* 121 Or. 57, 64 (254 Pac. 198), this court, speaking through Mr. Justice RAND, said:

"There was sufficient evidence offered to show that the defendant in dealing with this stock, was not within the provisos, even though there had been evidence of his ownership of it. His course of dealing with the stock consisted of repeated and continuing transactions all looking to the sale and transfer of the stock to the public generally, and the case was one where stock of but little if any value was being repeatedly sold to the public at its par value. Under the evidence defendant clearly violated the statute and the motions were properly overruled."

In the Barrett case, as in this, defendant Barrett contended "that in making the sale of the stock in question, he was merely selling his own property and therefore that the court erred in overruling his motions for a directed verdict and in arrest of judgment."

This same question was also raised in the case of *Hall* v. *Geiger-Jones Co.,* 242 U. S. 539, 555 (61 L. Ed. 480, 37 Sup. Ct. Rep. 217, see, also, Rose's U. S. Notes Supp.), and in *Merrick* v. *Halsey,* 242 U. S. 568 (61 L. Ed. 498, 37 Sup. Ct. Rep. 227). In the last case cited the same question presented in the instant case with ability was also presented very earnestly in the argument for appellees in page 574. Defendants rely with confidence on the case of *People* v. *Pace,* 73 Cal. App. 548 (238 Pac. 1089). That case supports the contention of defendants. The defendants' position is very forcibly stated in the opinion, but we cannot follow it. We think that both our court and the Supreme Court of the United States

have heretofore held the contrary view, as shown by the citations above.

8, 9. It may be very plausibly argued that the provisions of the statute give to the corporation commissioner arbitrary powers, but it must be remembered that the statute provides for a review of the power exercised by the commissioner in the courts. This, we believe, amply protects legitimate business and enterprises in this state: Or. L., § 6841. This court cannot and will not pass upon the soundness of the legislation any further than to inquire into its conformity with the fundamental law of the state.

The judgment of the Circuit Court is affirmed.

AFFIRMED.

RAND, C. J., and McBRIDE and ROSSMAN, JJ., concur.