Argued April 23, affirmed July 2, rehearing denied October 8, 1929.

STATE *v.* JAMES P. COOKE ET AL.

(278 Pac. 936.)

554

For appellant there was a brief over the names of *Messrs. Collier, Collier & Bernard* and *Messrs. Winter & Maguire*, with oral arguments by *Mr. John Collier, Mr. E. F. Bernard* and *Mr. J. P. Winter.*

For respondent there was a brief over the name of *Mr. Stanley Myers,* District Attorney, with oral arguments by *Mr. George W. Mowry* and *Mr. Leon Behrman.*

COSHOW, J.—■ "Embezzlement may be defined broadly as the fraudulent appropriation of another's property by a person to whom it has been intrusted or into whose hands it has lawfully come": 20 C. J. 407. The statute for the crime of embezzlement in this state is defined in Section 1955, Or. L. Property which may be embezzled in this state must be subject to larceny. The defendant is charged by indictment of embezzling "divers gold and silver coins, paper currency, bank bills and currency bills, lawful money of the United States of America, checks, notes, drafts, bonds, certificates of deposit, bills of exchange and other valuable securities." The first and second assignments of error are based upon the contention of appellant Cooke that there is a fatal variance between the indictment and the proof.

 The evidence shows that Welch took to the office of The Overbeck and Cooke Company a certificate of stock for thirty shares of California Petroleum common stock and another certificate of stock for ten shares of B. F. Goodrich preferred stock with directions to sell at the market and send to him the check of said corporation for the amount due him after deducting charges and commissions. The evidence shows that this amount was $1,881.06 as charged in the indictment. Appellant Cooke argues that there is no evidence tending to prove that any of the various kinds of personal property mentioned in the indictment belonging to said Welch ever came into the possession of defendant Cooke or the corporation The Overbeck and Cooke Company. Appellant very thoroughly analyzes the indictment and the evidence adduced to support it and especially stresses the necessity of proving that the property belonging to Welch and alleged to have been embezzled by defendant Cooke was lawful money of the United States.

Appellant also argues that there was no evidence of any checks, notes, drafts, bonds, certificates of deposit, bills of exchange or other valuable securities belonging to Welch ever having come into the possession of defendant Cooke. It follows from that argument that defendant could not have embezzled any of the property mentioned in the indictment. For that reason appellant Cooke argues that his motion for a directed verdict should have been sustained, and not having been allowed, his motion for a new trial should have been granted. There is respectable authority sustaining the contention of appellant Cooke to the effect that a charge of stealing lawful money of the United States can be proved

only by showing larceny of legal tender of the United States: *State* v. *Neilon,* 43 Or. 168, 174 et seq., and authorities there cited (73 Pac. 321) ; *Perry* v. *State,* 42 Tex. Crim. 540 (61 S. W. 400) ; *Alderman* v. *State,* 88 Fla. 375, 378 (102 South. 737).

Appellant contends that the words ''divers gold and silver coins, paper currency, bank bills and currency bills,'' followed as they are by ''lawful money of the United States of America,'' are thereby confined to mean legal tender of the United States. Silver coins are legal tender to a very limited extent. Bank bills are not legal tender at all. Some currency bills, the last of these various kinds of money mentioned in the indictment, are legal tender and others are not: 31 U. S. C. A. 221, Chap. 9, § 451 et seq. It is not necessary that the indictment be construed as though ''lawful money of the United States of America'' qualified the preceding words describing the kinds of money mentioned in the indictment. The indictment can well be construed to the effect that ''lawful money of the United States of America'' is another kind of money with which defendants are charged with having embezzled. Some silver coins, some currency bills are lawful money of the United States of America. Other silver coins, paper currency and currency bills are not lawful money of the United States of America. Bank bills are not legal tender. Therefore it is not proper to hold that lawful money of the United States of America is a qualification of the words ''bank bills.'' But it does not necessarily follow, even if the construction be placed on the terms ''lawful money of the United States of America'' contended for by appellant, that there was a variance between the allegations and the proof. Following

"lawful money of the United States of America" are descriptions of other personal property alleged to have been embezzled by defendant Cooke. If the state proved that defendant Cooke embezzled checks, notes, drafts, bonds, certificates of deposit, bills of exchange or other valuable securities, the conviction must be sustained.

The transaction disclosed by the evidence is to this effect: The prosecuting witness Arthur M. Welch delivered to the corporation The Overbeck and Cooke Company the two certificates of stock mentioned above with directions to sell the same at market and send to him the check for the amount due him after completion of the sale. The Overbeck and Cooke Company was not a member of the New York Stock Exchange, the transfer market for the sale of stocks. That corporation operated through the partnership of Logan & Bryan who were members. The partnership had offices in the same building with the corporation, The Overbeck and Cooke Company. The corporation delivered the certificates of stock to Logan & Bryan with instruction to sell at the market.

The partnership immediately wired their New York office to make the sale. The sale was made and reported. On the same day that the telegram was sent directing the sale of the stock, the two certificates of stock, with other certificates of stock belonging to other customers of The Overbeck and Cooke Company, were attached to a draft for $14,000, and forwarded by mail to Logan & Bryan at New York through United States National Bank of Portland and its New York correspondent. Upon delivery of the certificates of stock the draft was honored and the sale completed. When the draft was drawn in Portland through the United States Na-

tional Bank The Overbeck and Cooke Company was given credit on its books for the $14,000. That amount was about 96 per cent of the value of the certificates of stock attached to the draft. Later the additional amount for which the several certificates of stock attached to the said draft were sold was also credited to The Overbeck and Cooke Company by Logan & Bryan.

The evidence shows that The Overbeck and Cooke Company received the equivalent of money for the certificates of stock delivered to The Overbeck and Cooke Company by Welch for sale and remittance of the proceeds. Defendants never remitted to Welch. Their corporation received the stock, converted it into money, or its equivalent, and kept the money or its equivalent. Defendant seeks to escape liability by a specious argument that because the indictment charges him with having embezzled lawful money of the United States and there is no evidence that lawful money was actually paid to The Overbeck and Cooke Company for the certificates of stock, therefore, defendant is not guilty, though he may have appropriated the money for his own use.

The crime of embezzlement has been committed by defendant regardless of the means by which payment was made to his corporation by his brokers, Logan & Bryan. As a matter of fact no money in any form may have passed from Logan and Bryan in New York to The Overbeck and Cooke Company. They were dealing with each other daily and in large amounts. The transmission of the proceeds of the sale of the certificates of stock may have been made entirely by entries in books of account. Overbeck and Cooke Company received credit on their account in the United States National Bank at Portland, Oregon, for approximately the value of the se-

curities forwarded and attached to the draft. These securities included the certificates of stock of the prosecuting witness Welch.

Logan & Bryan sold the stock in the New York market and credited on their books the account they had with The Overbeck and Cooke Company. It may have been that said corporation was indebted to Logan & Bryan for much more than the proceeds of the stock amounted to. Logan & Bryan took up the draft when it was presented in New York City. That draft was presented through a bank. That bank was the corresponding bank in New York of the United States National Bank of Portland. The status of the accounts between those two banks does not appear in the record. No money of any kind may have passed from the bank at New York to the bank in Portland. The entire transaction may have been accomplished by the entry of certain items in the accounts of the various persons, firms and corporations involved.

If the extreme contention of appellant can prevail, then a firm transacting business as The Overbeck and Cooke Company was conducting its business can with impunity embezzle its customers' property. It would be beyond the power of the state in such cases to prove that the embezzler received any particular species of money as well as being unable to prove that he received legal tender. If the charge in the indictment were limited to lawful money of the United States the judgment might, perhaps, have to be reversed. *State* v. *Neilon*, above. But the indictment is broader than that and if the evidence established to the satisfaction of the jury beyond a reasonable doubt that defendant Cooke appropriated the property of Welch to his own use, then the

charge is supported and the verdict of guilt must be upheld. It is immaterial whether the property embezzled was in the form of money, checks, drafts or other forms of valuable securities.

■ It was unnecessary for the state to have specified, as it did, the property alleged to have been embezzled. It is safer to follow the statute in describing a crime, unless something more is absolutely required in order to make certain the particular crime charged. Unless the defendant was injured by the indictment being more specific than required by law, defendant has no just ground for complaining. Our statute prescribes:

"After hearing the appeal the court must give judgment, without regard to the decision of questions which were in the discretion of the court below, or to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." Or. L., § 1626, and notes following.

Or. Const., Art. VII, § 3c; *State* v. *Burke,* 126 Or. 651 (269 Pac. 869, 270 Pac. 756); *State* v. *Ross,* 55 Or. 450, 453 (104 Pac. 596, 106 Pac. 1022, 42 L. R. A. (N. S.) 601); from the syllabi of which we take the following:

"An indictment is sufficient if it contains such specifications of acts and descriptive circumstances as will, upon its face, fix and determine its identity of the offense, and enable the court by an inspection of the record alone to determine whether, admitting the truth of the specific acts charged, a thing has been done which is forbidden by law."

■ The sufficiency of the indictment is not questioned. The contention is that it does not charge defendants with having embezzled the proceeds of the certificates of stock. It is also claimed that the

evidence does not prove the charge described in the indictment. The evidence conclusively proves that defendants, acting through their corporation, did sell the shares of stock. They must have received therefor money or its equivalent, both of which are described in the indictment. It is immaterial whether that money was in the form of legal tender, paper notes, bank bills, checks, notes, drafts, bonds, certificates of deposit, bills of exchange or other valuable securities. The state was not required either to plead or to prove the source of the money embezzled: *State* v. *Dormitzer*, 123 Or. 165, 171 et seq. (261 Pac. 426).

■ The indictment fully informs defendant of the nature of the charge against him. The amount of funds embezzled is shown by the books of defendants' corporation. That amount, plus defendants' corporation's commission, was received from Logan & Bryan for the two certificates of stock delivered to The Overbeck and Cooke Co. by Welch, the prosecuting witness. There was no other transaction between said Welch and defendants that could be mistaken for the embezzlement proved. There could be no confusion regarding the particular crime charged. Defendants would have no difficulty sustaining a plea of former jeopardy if again charged with another crime for the same acts. They are not entitled to more: *State* v. *Dormitzer,* above; *State* v. *Underwood,* 79 Or. 338, 341 (155 Pac. 194); *State* v. *Chapin,* 74 Or. 346 (144 Pac. 1187). See, also, *Moore* v. *United States,* 160 U. S. 268 (40 L. Ed. 422, 16 Sup. Ct. Rep. 294). That defendants mingled the funds belonging to Welch with funds belonging to other persons or with the funds of The Overbeck and Cooke Co. constitutes no defense. When defendants at-

tached to a draft for $14,000 the two certificates of stock belonging to Welch and other customers, Welch's funds were mingled with the funds of others. Welch owned $1,881.06 of the $14,000, or perhaps a little less. The $1,881.06 none the less belonged to Welch and was subject to embezzlement: Or. L., § 1955.

It is further contended that The Overbeck and Cooke Co. was the debtor of the prosecuting witness and not an agent. Appellant contends that the relation of creditor and debtor is made clear by the testimony of the prosecuting witness to the effect that he delivered the certificates of stock to said corporation with instructions to sell at market and mail its check to him: *Furber* v. *Dane,* 204 Mass. 412 (90 N. E. 859, 27 L. R. A. (N. S.) 808, 810). We do not agree with the opinion in *Furber* v. *Dane.* We think the better rule is stated in the case of *People* v. *Meadows,* 199 N. Y. 1, 8 et seq. (92 N. E. 128). The last case cited is very similar to the instant case in a good many respects. The testimony disclosed the transactions involved in the instant case as follows:

The prosecuting witness Welch delivered the certificates of stock to The Overbeck and Cooke Co. with instructions to sell at the market and remit its check for the amount. This evidence shows the relation of principal and agent, not that of creditor and debtor. Welch had no general account with The Overbeck and Cooke Co. While he had other transactions of a similar nature each transaction was separate and was governed by special instructions.

It is not contended by the state that the mingling of the funds belonging to Welch with those belonging to other customers or with the funds of the corporation in itself constituted embezzlement. The position of the

state is that because defendant did not send to Welch the proceeds of the sale of the stock belonging to Welch after repeated demands defendant Cooke thereby converted the funds to his own use. The Overbeck and Cooke Co. could not change its relation from that of agent to that of simple debtor without the consent, express or implied, of their customer Welch. A very different relation would have occurred if Welch had said to defendant "sell this stock and give me credit for it." Instead he wanted the stock to be sold and the proceeds remitted as soon as the proceeds were received by his agent. It is not claimed by the state that the mere fact that the money for the stock was received by The Overbeck and Cooke Co. from its own bank, United States National Bank, as an advance on the draft drawn on Logan & Bryan in New York constituted embezzlement. It is not claimed by the state that the fact that the certificates of stock belonging to Welch were joined to the draft together with a number of other similar certificates of stock owned by other parties and the proceeds of stock owned by different parties constituted embezzlement. Those acts commingled with refusal to pay constitute embezzlement. The embezzlement is the concurrence of all of these acts together with a refusal of defendants to pay to Welch the money they had received for his shares of stock.

■■ A broker as a rule is the agent of his customer. He may be convicted for embezzlement under the same evidence that any other agent may be who has fraudulently or unlawfully appropriated his principal's property to his own use: 20 C. J. 442, note j; *People* v. *Meadows,* above; *People* v. *Toohill,* 208 App. Div. 174 (203 N. Y. Supp. 457). It is further urged that there is no evidence connecting defend-

ant Cooke with the alleged embezzlement. The Overbeck and Cooke Co., being a corporation, could act only through its agents, officers and other employees. Defendant Cooke was the president of the company and the owner of 60 per cent of its capital stock. He was in immediate control of its business. One of his employees testified that he followed "rigidly" the instructions of defendant Cooke in the transactions of the prosecuting witness Welch with said corporation. The evidence also tends to prove that Cooke was aware of the insolvency of the corporation. He had been told by those directed by him to audit his books that the corporation, The Overbeck and Cooke Co., having a capital stock of $10,000 was in debt over a million and a half dollars.

He also gave instructions to at least one of the employees not to order out stock purchased by his customers, except to those whose demands were most urgent. His corporation dealing with prosecuting witness Welch indicates very strongly that the dealing of the corporation with Welch was in accordance with said instructions of defendant Cooke. More than a week after receipt of the proceeds of the sale of the shares of stock sold by the corporation for Welch, and a week after confirmation of that sale by mail as well as by wire had been received in Portland, Welch placed an order with the corporation to purchase 10 shares of Sinclair stock at 108.12½ per share. Welch was assured that such purchase had been made and the price of the stock, including commissions amounting to $1,085, was charged up to Welch, but the stock was never ordered out. The money was never forwarded to New York notwithstanding it was charged against Welch. At that time The Overbeck and

Cooke Co. had in its possession $1,881.06 belonging to Welch.

■ There are other items of evidence tending to connect defendant Cooke directly with these transactions. The evidence was abundantly sufficient to take the case to the jury. The evidence of the desperate financial condition of defendant's corporation ᴡas evidence of a motive on the part of Cooke to retain and use for his own benefit the funds belonging to Welch. Such evidence was competent to prove, or at least from which the jury could lawfully infer, defendant Cooke's connection with the embezzlement of Welch's money: *State* v. *Elwell,* 105 Or. 282, 284 (209 Pac. 616); 20 C. J. 484; *Dimmick* v. *United States,* 135 Fed. 257 (70 C. C. A. 141); *State* v. *Burke,* above.

■ Even though defendant Cooke had intended to return the money belonging to Welch that he was unlawfully using for his own benefit, he is guilty of embezzlement because he applied it to his own use: 20 C. J. 437, § 22.

"The motive with which the offense is committed is immaterial." 20 C. J. 436, note 67.

■ Appellant challenges the soundness of an instruction and excepts to the court's refusal to give instructions requested by him. The principal contention of appellant in this behalf is in giving an instruction of which the following is a part. The specific error is based on the omission of the word "knowingly" as a modifier of the word "permitted" in the following connection:

" * * and furthermore, that even if you should find that Overbeck & Cooke Company had misappropriated funds belonging to the prosecuting witness Welch you cannot find the defendant guilty, unless you further find, beyond a reasonable doubt, from the evidence,

that the defendant, James P. Cooke, participated in said misappropriation, embezzlement and conversion; that is, that he directly participated, or directed, or permitted the same to be done."

Appellant contends that the last clause should have been "or knowingly permitted the same to be done" and because of the omission of the word "knowingly" the instruction is erroneous and prejudicial. The word "permitted" implies in a general sense that a person having authority to prevent permits or consents to the doing of the offensive act. It implies knowledge.

"Every definition of suffer or permit includes knowledge of what is to be done under the sufferance or permission and intention that what is done was what was to be done. 17 Blatch. 325." Quoted in Baldwin's Century Edition of Bouvier's Law Dictionary, *Lemery* v. *Leonard,* 99 Or. 670, 678 (196 Pac. 376).

In addition the court instructed the jury as follows:

" * * that is to say before a conviction can be had on the charge in this indictment it must appear that the accused intentionally embezzled and intentionally converted the said property to his own use."

█ The alleged error on account of instructions is not well taken.

The alleged errors from number 5 to 23, inclusive, are based on the admission of testimony and exhibits touching other similar transactions introduced and received for the purpose of showing a criminal intent on the part of defendant Cooke. For that purpose the evidence and exhibits were admissible: Underhill on Criminal Evidence (2 ed.), § 89; *State* v. *Lee Wye,* 123 Or. 595, 605 (263 Pac. 60); *State* v. *McClard,* 81 Or. 510, 515, 516 (160 Pac. 130); 9 R. C. L. 1295, § 1241; 5 Ency. of Evidence, 144.

"Since from its nature intent is incapable of direct proof, great latitude is necessarily allowed in proving this element of the offense. Broadly speaking, any evidence is admissible which has a tendency, even the slightest, to establish fraudulent intent on the one hand, or on the other hand to show the *bona fides* of the accused." 20 C. J. 485 (§ 31).

16 C. J. 596 (§ 1159); *State* v. *O'Donnell,* 36 Or. 222, 225 (61 Pac. 892).

▉ Assignments numbered 24 and 25 are based on the order of the court denying appellant's motion requiring the state to elect on which transaction it was relying for conviction. The learned judge presiding at the trial confined the jury to the transactions selling the certificates of stock, that is, he did not permit the jury to consider the order for the purchase of Sinclair stock or the sale of the Chili bond. Those two transactions were introduced by the plaintiff for the sole purpose of showing the intent to embezzle: *State* v. *Reinhart,* 26 Or. 466, 481, 482 (38 Pac. 822); *State* v. *Morris,* 58 Or. 397, 401 et seq. (114 Pac. 476).

▉ Assignments numbered 26 to 30, inclusive, are based on the ruling of the court admitting as evidence the ledger showing the account of prosecuting witness Welch with the defendants. These entries were made under the general supervision of the defendant Cooke and were clearly admissible as admissions against interest. The entries were made in the regular course of business, and there was evidence to show that the defendant Cooke kept himself informed of the general condition of his accounts. What was done in the way of bookkeeping was done by and under his general orders. The entries were properly identified: Or. L., § 727, subds. 2, 3, 6 and

§ 707; *State* v. *Burke,* above. The accounts with Welch were properly admitted.

The only point raised by defendant which is at all doubtful is the description of the property alleged to have been embezzled. This doubt would easily have been avoided by following strictly the statute defining embezzlement. The simple statement of having charged the defendant with having embezzled "money" instead of "lawful money" of the United States would have prevented a great deal of contest on this appeal. On that phase of the case, however, the lucid and sensible remarks of Mr. Justice Mc-BRIDE in *State* v. *Mishler,* 81 Or. 548, 550–552, 555 (160 Pac. 382), are apropos. See, also, *State* v. *Hibberd,* 123 Or. 490, 495 (262 Pac. 950).

Judgment is affirmed.

AFFIRMED. REHEARING DENIED.

BROWN, J., absent.